**AKERMAN LLP**
JUSTIN D. BALSER (SBN 213478)
Email: justin.balser@akerman.com
NATALIE L. WINSLOW (SBN 281704)
Email:natalie.winslow@akerman.com
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Attorneys for Defendants
NATIONSTAR MORTGAGE LLC dba MR. COOPER and THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor to JPMORGAN CHASE BANK, N.A., as Trustee for the Holders of the SAMI II Trust 2005-AR2, Mortgage Pass-Through Certificates, Series 2005-AR2 *incorrectly sued as* THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor in interest to JP MORGAN CHASE BANK, N.A., as Trustee for Structured Asset Mortgage Investments 11 Inc. Mortgage Pass-Through Certificates Series 2005-AR2

**AKERMAN LLP**
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ,

Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC DBA MR. COOPER; THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK as successor in interest to JP MORGAN CHASE BANK, N.A., as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS 11 INC. Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC; All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintifs' Title, or any Cloud on Plaintiffs' Title Thereto; DOES 1-100,

Defendants.

Case No.

**NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER'S NOTICE OF REMOVAL TO FEDERAL COURT BASED ON DIVERSITY JURISDICTION**

[Santa Cruz County Superior Court Case No. 21CV00246]

Filed concurrently with:
1. Civil Case Cover Sheet
2. Certificate of Interested Parties

Complaint Filed: February 1, 2021
Trial Date: None

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Defendant Nationstar Mortgage LLC dba Mr. Cooper[1] removes this action from the Santa Cruz County Superior Court to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, and states as follows:

## I. STATEMENT OF THE CASE

1. On February 1, 2021, plaintiffs Heriberto S. Martinez and Maria E. Martinez commenced an action in the Santa Cruz County Superior Court styled *Heriberto S. Martinez et al. v. Nationstar Mortgage LLC dba Mr. Cooper et al.*, designated case no. 21CV00246. A copy of the summons and complaint received by Nationstar pursuant to plaintiffs' service of process is attached as **Exhibit 1**.

2. Plaintiffs assert the following causes of action against Nationstar and The Bank of New York Mellon fka The Bank of New York, as successor to JPMorgan Chase Bank, N.A., as Trustee for the Holders of the SAMI II Trust 2005-AR2, Mortgage Pass-Through Certificates, Series 2005-AR2 (**BoNYM**) in the complaint: quiet title, declaratory relief, cancellation of instruments, slander of title, and violation of California Homeowner Bill of Rights.

## II. BASIS FOR REMOVAL JURISDICTION

1. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). Diversity jurisdiction exists if there is "complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84, 126 S. Ct. 606, 610, 163 L. Ed. 2d 415 (2005). The amount in controversy must also exceed $75,000. *See* 28 U.S.C. § 1332(a).

[1] The Bank of New York Mellon fka The Bank of New York, as successor to JPMorgan Chase Bank, N.A., as Trustee for the Holders of the SAMI II Trust 2005-AR2, Mortgage Pass-Through Certificates, Series 2005-AR2 consents to this removal.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**A. Complete Diversity of Citizenship**

2. Plaintiffs are citizens of California based on domicile because they claim primary residency and ownership of the real property commonly known as 203 Kirsten Court, Watsonville, California. (Compl., ¶¶ 1, 24.) They intend to remain there as evidenced by their lawsuit to, among other things, quiet title in their favor as to their primary residence. Plaintiffs have evidenced no intent to leave California. *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) (a person's old domicile is not lost until a new one is acquired); *Bey v. SolarWorld Indus. Am.*, 904 F. Supp. 2d 1096, 1102 (D. Or. 2012) (domicile presumptively continues unless rebutted with sufficient evidence of change) (citing *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011).

3. Nationstar is a Delaware limited liability company. As a limited liability company, Nationstar "is a citizen of every state of which its owners/members are citizens[.]" *Johnson v. Colombia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Nationstar's members are Nationstar Sub 1 LLC (**Sub 1**) and Nationstar Sub 2 LLC (**Sub 2**). Both Sub 1 and Sub 2 are wholly-owned by Nationstar Mortgage Holdings, Inc. (**NSM**). A corporation is a citizen of the state in which it is incorporated and in which it has its principal place of business. *See* 28 U.S.C. § 1332(c). NSM is a Delaware corporation with a principal place of business in Texas. Therefore, Nationstar is a citizen of Delaware and Texas for purposes of diversity jurisdiction.

4. BoNYM is a national bank whose principal office is located in New York, New York. Under 28 U.S.C. § 1348, a national bank is considered a citizen for diversity jurisdiction where it has its principal place of business. See, *e.g.*, *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006). BoNYM is a New York citizen for diversity purposes.

5. Upon information and belief, DOES 1 through 100 have not been named or served. "For purposes of removal . . . the citizenship of defendants sued under fictitious names shall be disregarded." *See* 28 U.S.C. § 1441(a).

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**B. Affinia is a Nominal Defendant whose Citizenship should Not be Considered**

6. Courts should "ignore the citizenship of nominal or formal parties who have no interest in the action, and are merely joined to perform the ministerial act of conveying the title if adjudged to the complainant." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000).

7. Defendants who file a declaration of non-monetary status to which plaintiffs do not object are merely nominal parties whose citizenship does not count for diversity jurisdiction purposes. *Silva v. Wells Fargo Bank, N.A.*, 11-3200, 2011 WL 2437514, at *4 (C.D. Cal. June 16, 2011); *Rivera v. Aurora Loan Services, LLC*, No. 09-2686, 2010 WL 1709376, at *2 (S.D. Cal. Apr. 26, 2010); *Lawrence v. Aurora Loan Services, LLC*, No. 09-158, 2010 WL 449734, at *4 (E.D. Cal. Feb. 8, 2010); *Figueiredo v. Aurora Loan Services, LLC*, No. 09-4784, 2009 WL 5184472, at *1 (N.D. Cal. Dec. 22, 2009). However, "[a] party that files a declaration of non-monetary status does not actually become a nominal party until 15 days pass without objection." *Sun v. Bank of Am. Corp.*, No. 10-0004, 2010 WL 454720, at *2 (C.D. Cal. Feb. 8, 2010); *accord Wise v. Suntrust Mortgage, Inc.*, No. 11-1360, 2011 WL 1466153, at *4 (N.D. Cal. Apr. 18, 2011).

8. Plaintiffs allege that Nationstar and BoNYM are pursuing a foreclosure sale of their primary residence "through the use of [defendant] AFFINIA." (Compl., ¶ 46. Affinia filed a declaration of non-monetary status to plaintiffs' complaint by foreclosure trustee pursuant to Cal. Civ. Code § 29241 on February 19, 2021. Declaration, **Exhibit 2**. Affinia asserts, among other things, its belief "that it has been named in this proceeding solely in its capacity as trustee or dual agent under the Deed of Trust." (*Id.*, ¶ 4.) Affinia further "maintains a reasonable belief that it has not been named due to any acts or omissions on its part in the performance of its duties as trustee or agent." (*Id.*) Affinia "agrees to be bound by whatever non-monetary order or judgment is issued by the Court regarding the subject Deed of Trust." (*Id.*, ¶ 5.)

9. Plaintiffs did not object to Affinia's declaration of non-monetary status. Docket, **Exhibit 3**.

10. Further, actions related to the foreclosure filings and trustee's sales are privileged, preventing a claim for damages against the trustee. *See* Cal. Civ. Code § 2924(d) (incorporating Cal. Civ. Code § 47(c)). District courts have found trustees fraudulently joined in materially similar cases, affirming the presence of diversity jurisdiction in the instant action. *Marquez v. Wells Fargo Bank, N.A.*, 13-2819, 2013 WL 5141689, at *1 (N.D. Cal. Sept. 13, 2013); *Sherman v. Wells Fargo Bank, N.A.*, 11-0054, 2011 WL 1833090, at *3 (E.D. Cal. May 12, 2011).

11. Accordingly, Affinia is a nominal party whose citizenship is irrelevant for diversity purposes.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**B. The Amount in Controversy Exceeds $75,000**

12. Under 28 U.S.C. § 1332(a), the matter in controversy must exceed $75,000.00. The amount in controversy here exceeds this statutory minimum as the original principal balance of the subject loan was $552,000.00. Deed of Trust, **Exhibit 4**. The value of the property has also been estimated at $610,965.00. by redfin.com as of March 8, 2021. Declaration of Natalie L. Winslow, **Exhibit 5**.[2]

13. Both the Supreme Court and the Ninth Circuit Court of Appeals have held that "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 347 (1977); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). The "value of the object of the litigation"—the loan used to refinance the purchase of the home or the home value—is within the range of $552,000.00 and $610,965.00.

14. Plaintiffs seek quiet title and declaratory relief related to the property. Plaintiffs also seek to cancel the deed of trust, with a face value of $552,000.00, along

[2] Plaintiffs' complaint references a deed of trust dated on or about June 3, 2005, recorded with the Santa Cruz County Recorder as instrument no. 2004-0063876. This instrument number is a deed, not the applicable deed of trust recorded against the property. **Exhibit 6**. The at-issue deed of trust is attached as Exhibit 4.

with the corresponding note, assignments, notice of default, notice of trustee's sale, and substitution of trustee. (Compl., ¶¶ 52-53.) Plaintiffs' entire action arises from and relates to the loan and the non-judicial foreclosure proceedings on the property. The value of the object of litigation (the amount in controversy) is properly measured by the face value of the deed of trust or value of the property.

15. Plaintiffs also seek unspecified damages related to their slander of title claim.

16. Plaintiffs also seek damages for their violation of California Homeowner Bill of Rights claim, including "return of title, or damages for the loss of equity in the subject property plus treble damages or $50,000, whichever is greater. . . ." (Compl., ¶ 69.)

17. Plaintiffs also seek in their prayer for relief their attorneys' fees, mental distress damages, and punitive damages through the complaint, which should be considered when evaluating the amount in controversy. *See Simmons v. PCR Tech*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002) (noting that the jurisdictional minimum may be satisfied by claims for special and general damages, punitive damages and attorneys' fees).

18. Although Nationstar and BoNYM deny plaintiffs' allegations, if plaintiffs prevail on their claims, the damages would exceed the jurisdictional minimum.

19. Given the facts above, the amount in controversy requirement is easily satisfied.

## III. ALL PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

1. Removal of this action is timely. Plaintiffs filed the complaint on February 1, 2021. Nationstar was served on February 19, 2021. *See* Exhibit 1.

2. This Court is the appropriate forum for removal. Plaintiffs filed the state court action in Santa Cruz County Superior Court. The United States District Court for

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

the Northern District of California is the federal judicial division embracing Santa Cruz County, California.

3. All served defendants must join a petition for removal. 28 U.S.C. § 1446(a)(2). Nationstar and BoNYM consent to this removal. Consent of Affinia is not required because it is a fraudulently-joined or nominal party. *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) ("[T]he 'rule of unanimity' does not apply to nominal, unknown or fraudulently joined parties[.]" (internal quotation marks omitted)).

4. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all of the process, pleadings, and orders on file in the state court action are attached hereto as **Exhibit 7**.

5. Written notice of the filing of this notice of removal will be given to plaintiffs.

6. A copy of this notice will be promptly filed with the Clerk of the Superior Court of Santa Cruz County.

///

///

///

///

///

///

///

///

///

///

///

///

///

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## **CONCLUSION**

By this notice of removal and its attachments, Nationstar does not waive any objections it may have as to service, jurisdiction or venue, or any other defenses or objections they may have to this action. Nationstar makes no admission of fact, law or liability by this notice, and expressly reserves all defenses, motions and/or pleas. Nationstar prays the state court action be removed to this court, that all further proceedings in the state court action be stayed, and to receive all additional relief to which it is entitled.

Dated: March 12, 2021

**AKERMAN LLP**

By: */s/ Natalie L. Winslow*
Justin D. Balser
Natalie L. Winslow

Attorneys for Defendants NATIONSTAR MORTGAGE LLC dba MR. COOPER and THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor to JPMORGAN CHASE BANK, N.A., as Trustee for the Holders of the SAMI II Trust 2005-AR2, Mortgage Pass-Through Certificates, Series 2005-AR2 *incorrectly sued as* THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor in interest to JP MORGAN CHASE BANK, N.A., as Trustee for Structured Asset Mortgage Investments 11 Inc. Mortgage Pass-Through Certificates Series 2005-AR2

# EXHIBIT 1



LDD / ALL
**Transmittal Number: 22789287**
**Date Processed: 02/19/2021**

# Notice of Service of Process

**Primary Contact:** LeAllen Frost
Nationstar Mortgage LLC
8950 Cypress Waters Blvd.
Coppell, TX 75019-4620

| | |
|---|---|
| **Entity:** | Nationstar Mortgage LLC<br>Entity ID Number 2050233 |
| **Entity Served:** | Nationstar Mortgage LLC. d/b/a Mr. Cooper |
| **Title of Action:** | Heriberto S. Martinez vs. Nationstar Mortgage LLC. d/b/a Mr. Cooper |
| **Matter Name/ID:** | Heriberto S. Martinez vs. Nationstar Mortgage LLC. d/b/a Mr. Cooper (10967559) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Property |
| **Court/Agency:** | Santa Cruz County Superior Court, CA |
| **Case/Reference No:** | 21CV00246 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/19/2021 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Charles T. Marshall<br>619-807-2628 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com

EXHIBIT 1

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
2/1/2021 10:13 PM
Alex Calvo, Clerk
By: Helena Hanson, Deputy

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER (See Attachment for Complete List of Defendants)

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

HERIBERTO S. MARTINEZ, MARIA E. MARTINEZ

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Santa Cruz County Superior Court
701 Ocean Street, Room 110
Santa Cruz, CA 95060

CASE NUMBER *(Número del Caso):* 21CV00246

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Office of Charles T. Marshall, 415 Laurel Street, #405 San Diego, CA 92101 (619)807-2628

DATE: *(Fecha)* 2/1/2021 Clerk, by *(Secretario)* Helena Hanson, Deputy *(Adjunto)* ALEX CALVO

Helena Hanson

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: Heriberto Martinez, Maria Martinez v. Nationstar Mortgage LLC., et al | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☑ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK as successor in interest to JP MORGAN CHASE BANK, N.A. as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS 11 INC. Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC.; All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiff' Title Thereto; DOES 1-100,

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT Attachment to Summons**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
2/1/2021 10:13 PM
Alex Calvo, Clerk
By: Helena Hanson, Deputy

Charles T. Marshall, Esq, (SBN 176091)
Law Office of Charles T. Marshall
415 Laurel St., #405
San Diego, CA. 92101
Tel: (619) 807-2628
Fax: (866) 575-7413
Email: cmarshall@marshallestatelaw.com
Attorney for Plaintiffs,
HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA CRUZ**

| | |
|---|---|
| HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ,<br>Plaintiffs,<br>vs.<br>NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER; THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK as successor in interest to JP MORGAN CHASE BANK, N.A. as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS 11 INC. Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC.; All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiff' Title Thereto; DOES 1-100,<br>Defendant(s). | Case No: 21CV00246<br>**PLAINTIFFS' VERIFIED COMPLAINT FOR DAMAGES**<br>1) QUIET TITLE<br>2) DECLARATORY JUDGMENT UNDER CODE OF CIVIL PROC., § 1060<br>3) CANCELLATION OF INSTRUMENTS<br>4) SLANDER OF TITLE<br>5) VIOLATION OF CALIFORNIA HOMEOWNER BILL OF RIGHTS<br>**JURY TRIAL DEMANDED** |

**TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Plaintiffs HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ (hereinafter "Plaintiffs") sue NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER ("NATIONSTAR"); THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK ("BONYM") as successor in interest to JP MORGAN CHASE BANK, N.A. ("CHASE") as Trustee for

STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. ("SAMII") Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC. ("AFFINIA"); DOES 1-100, and any and all adverse claimants, known or unknown, for quiet title and related causes of action.

## I. PARTIES AND JURISDICTION

1. Plaintiffs, HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ, are residents of Santa Cruz County, California. They own the real property commonly known as 203 Kirsten Avenue, Watsonville, CA. All acts complained of herein occurred within the territorial jurisdiction of this court lying in SANTA CRUZ COUNTY, CALIFORNIA.

2. Defendant NATIONSTAR MORTGAGE, LLC is a Texas limited liability registered as a foreign entity with the California Secretary of State.

3. Defendant THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK ("BONYM") as successor in interest to JP MORGAN CHASE BANK, N.A. ("CHASE") as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. ("SAMII") Mortgage Pass-Through Certificates Series 2005-AR2, believed to be a New York trust organized as a Real Estate Mortgage Investment Conduit ("REMIC") under Title 26 U.S.C. 860A et seq.

4. Defendant AFFINIA DEFAULT SERVICES is a Florida LLC, registered as a foreign LLC with the State of California under Entity No. 201733210180 with a registration date of November 17, 2017.

5. "All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described in The Complaint Adverse to Plaintiffs' Title, Or Any Cloud on Plaintiff' Title Thereto" are sued herein pursuant to California Code of Civil Procedure Section 762.020(a).

## II. JURISDICTION

6. This court has subject matter jurisdiction over all matters alleged herein.

7. This action is properly filed as an unlimited civil action seeking damages in excess of $25,000.

8. The court has jurisdiction over Plaintiffs and all named Defendants as corporations doing business in the State of California or who have potential interest in the real property located in Watsonville, California.

## III. VENUE

9. Venue is proper in this court because the real property at issue is located in SANTA CRUZ County and significant events of record occurred in SANTA CRUZ County.

## IV. FACTUAL ALLEGATIONS

10. Upon information and belief and by published statements made by Defendants, Plaintiffs allege:

11. Plaintiffs' real property that is the subject of the disputed loan is commonly known as 203 Kirsten Avenue, Watsonville, CA, with a legal description of: ("Subject Property")

## V. TITLE HISTORY

12. A Deed of Trust ("DOT") dated on or about June 3, 2005 was recorded in the office of the SANTA CRUZ County Recorder as Instrument # 2004-0063876, naming "America's Wholesale Lender" (AWL) as the 'Lender', although the event at issue is not subject to being described as a loan with an associated lender and/or borrower, although the term "Subject Loan" will be used as a stand-in to describe the events at issue in this case.

13. The Note and Deed of Trust on the Subject Property are hereinafter referred to as the 'purported' "Subject Loan."

14. The 'Lender's' identity was misrepresented, as were the terms of the financing.

15. The Note stated that: (a) "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder;'" (b) if the borrower is in default, "the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me. . . ." (c) "[i]f the Note Holder has required me to pay immediately in full the Note Holder will have the right to be paid back by me. . . ." (d) "[i]n addition to the protections given to the Note Holder under this

Note, a Mortgage, Deed of Trust, or Security Deed (the 'Security Instrument') protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note."

16. Thus, the Note contractually defines Note Holder as someone who both (a) takes this Note by transfer AND (b) who is entitled to receive payments under this Note.

## VI. SUBSEQUENT RECORDED DOCUMENTS

17. On or about June 29, 2013 at, a document entitled Assignment of Deed of Trust was recorded against the Subject Property in the Official Records of SANTA CRUZ County as # 2013-0041355 ("First Assignment").

18. The First Assignment, purported to transfer any beneficial interest in the DOT **from** AWL **to** Nationstar.

19. For the reasons stated herein, AWL **had no interest** in the DOT to transfer via the First Assignment.

20. On information and belief, Plaintiffs allege that AWL was never a licensed lender, and was never a New York Corporation at or near the time of loan origination at issue in this case, and thus void, not merely voidable.

21. On information and belief, Plaintiffs allege that the alleged Assignment of DOT was the product of robo-signing and thus void, not merely voidable.

22. On information and belief, Plaintiffs allege that the alleged Assignment of DOT was performed with reference to same DOT, without a corresponding assignment of the associated debt (promissory Note), making same DOT alleged assignment void, a nullity.

## FIRST CAUSE OF ACTION: QUIET TITLE

(Against NATIONSTAR, BONYM, DOE DEFENDANTS)

23. Plaintiffs hereby incorporate by reference the allegations in each of the preceding paragraphs as though fully set forth herein.

24. Plaintiffs have title to the subject real property, as pleaded herein. It is their primary residence.

25. In the Deed of Trust, Plaintiffs agreed: "Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."

26. Plaintiffs' title to the Subject Property is superior to all others as is fully set forth herein.

27. There is a break in the chain of title of the DOT in the Subject Property.

28. There is no link between an original lender/beneficiary of the DOT and any claimed successor "beneficiaries."

29. Defendants, and each of them, have claimed an adverse interest in Plaintiffs' real property by virtue of recording false instruments against the Subject Property to effectuate an unauthorized foreclosure.

30. Plaintiffs are not in default of loan payments to any of the Defendants, rendering the recorded NODs materially false.

31. Plaintiffs' title has been clouded, broken and irreparably made unmarketable by Defendants' acts as complained of in this Action. Accordingly, Plaintiffs seeks to quiet title to the Subject Property.

32. Defendants, in the manners specified hereinabove, have falsely and maliciously made claims adverse to Plaintiffs and against their Subject Property by wrongfully recording fraudulent and false documents claiming encumbrances on Plaintiffs' Property. Therefore; pursuant, but not thereby limited to, CCP § 761.020(d) et seq. *Id.*, Plaintiffs seek a determination and declaratory judgment quieting title as of the date of this filing.

33. The elements of this Cause of Action for Quiet Title pursuant to CCP § 761.020, are contained herein and include:

a. The description of the property including its legal description and street address or common designation, the subject of this action;

b. The title to which a determination is sought and basis thereof, is further described herein above and includes Plaintiffs HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ;

c. The adverse claims to the title of Plaintiffs against which a determination is sought also include unknown defendants who may claim to be the "beneficial holder" of Plaintiffs' Mortgage Note and Deed of Trust via a PSA; who claims to have acquired "ownership" as beneficiary of the alleged "debt" on Plaintiffs'

Property through an unknown assignment and further allege to be either the agent of, nominee and/or the nominal beneficiary for, itself and each claim mentioned herein is adverse to title to the Property[1];

d. The date as of which the determination is sought is the date of filing of this complaint and/or the adjudication or resolution of this cause of action by the Court, whichever is later[2];

e. The prayer for determination of the title of Plaintiffs against the adverse claims of Defendants is included herein below[3];

34. Plaintiffs are informed and believe and thereon allege as further stated herein, that Defendants, and each one, including all persons known or unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this Complaint adverse to Plaintiffs' title or any cloud upon Plaintiffs' title thereto[4] and DOES 1-20 inclusive; each claim an interest in the property adverse to Plaintiffs. Plaintiffs denies that any Defendant has a legal, equitable or any other right, claim, title or interest in Plaintiffs' Property.

**TENDER**

35. Plaintiffs are not in default to these Defendants and do not owe these Defendants a loan obligation under the Note or Deed of Trust and any attempted trustee sale would be void.

36. Due to the lack of pecuniary interest in the Note and Deed of Trust by any Defendant; Plaintiffs' denial of the purported debt; the invalid and void purported "Note," "DOT," Plaintiffs are not required to tender.[5]

37. Plaintiffs therefore seek to quiet title to the subject Property vesting in Plaintiffs alone; that Defendants herein, and each of them, including all persons known or unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this Complaint adverse to Plaintiffs' title or any cloud upon Plaintiffs' title thereto on the basis of any alleged assignment, recorded or unrecorded, created and/or recorded by Defendants, be

---

[1] CCP § 761.020(c).

[2] CCP § 761.020(d).

[3] CCP § 761.020(e).

[4] CCP § 762.050.

[5] *Pfeifer v. Countrywide Home Loans, Inc.*, 2012 Cal. App. LEXIS 1265 (Cal. App. 1st Dist. 2012).

declared to have no estate, right, title or interest in the subject property; that said Defendants be forever enjoined from asserting same; and, for judgment as more fully set forth below.

38. Each named Defendant proffers that the Mortgage Note and DOT authorizes them to conduct certain actions specified herein, which Plaintiffs allege are wrongful and/or illegal. Said actions include claims against and adverse to Plaintiffs' title to and ownership of their Property. These actions and claims adverse to Plaintiffs' claims include, but are not thereby limited to, the following:

- To claim "ownership" of Plaintiffs' alleged "debt" or the Mortgage Note;
- To accept "assignment" of the purported DOT;
- To "securitize" Plaintiffs' purported "mortgage;"
- To act as a "successor in interest" to Plaintiffs' Property;
- To authorize foreclosure on Plaintiffs' Property;
- To allege a "default" or "breach" of "obligations" against Plaintiffs;
- To declare "...all sums secured..." "Immediately due and payable;"
- To attempt to collect the purported "debt" from Plaintiffs;
- To foreclose on and sell Plaintiffs' Property;
- To record or cause to be recorded any documents related to Plaintiffs' Property;
- To claim to be the "Lender," "investor," "holder" or "holder in due course of the purported "debt;" or in the DOT;
- To declare "...all sums secured..." "immediately due and payable;"
- To attempt to collect or enforce the purported "debt;" or
- To foreclose on the alleged "security" and sell Plaintiffs' Property.

39. Plaintiffs have suffered monetary damages as a result of this violation, as well as attorney fees and costs.

**SECOND CAUSE OF ACTION: DECLARATORY RELIEF UNDER CC § 1060**

**(Against ALL Defendants; DOE Defendants)**

40. Plaintiffs incorporate all the allegations in the preceding paragraphs as set forth fully herein.

41. "A complaint for declaratory relief is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court." See *Wellenkamp v. Bank of America* (1978) 21 Cal.3d 943, 947; see also *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 605.

42. An actual controversy has arisen and now exists between Plaintiffs and ALL Defendants and each of them, concerning the respective rights and duties to each of the respective parties as to the purported Note and Deed of Trust and Subject Loan.

43. Defendants mistakenly and unlawfully contend BONYM is the beneficiary, and that the loan was transferred legally and validly to the Securitized Trust, and the Securitized Trust held legal rights to be transferred to it.

44. No defendant has or had the legal right to foreclose upon Plaintiffs' DOT or to declare Plaintiffs' Note or DOT due and in default.

45. A judicial determination of the rights and responsibilities of the parties over the Note and DOT is necessary and proper at this time, as the uncertainty over the issue of whether the Defendants, and each of them, have an enforceable interest in the Note and DOT resulted in Plaintiffs previously making mistaken payments to strangers; subjecting Plaintiffs to the illegal accounting practices and abuses by NATIONSTAR, prejudicing and harming Plaintiffs from seeking relief from the real creditor and clearing his debt, finally resulting in the attempted wrongful and oppressive non-judicial foreclosure of Plaintiffs' home.

46. There is a justiciable controversy in which BONYM and NATIONSTAR have recorded false documents and made false assertions of authority to hold a foreclosure sale of Plaintiffs' home through the use of AFFINIA.

47. A judicial determination resolving this actual controversy is necessary and appropriate at this time.

48. WHEREFORE Plaintiffs pray for judgment as detailed below.

**THIRD CAUSE OF ACTION: CANCELLATION OF INSTRUMENTS**

**(Against ALL DEFENDANTS; DOE Defendants)**

49. Plaintiffs hereby incorporate by reference the allegations in each of the preceding paragraphs as though fully set forth herein.

50. Pursuant to Civil Code § 3412, "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against

whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

51. The Court may order cancellation of an invalid written instrument that is void or voidable. *Compass Bank v. Petersen*, 886 F.Supp.2d 1186, 1194 (C.D. Cal. 2012) (citing [43] Cal. Civ. Code § 3412 *et seq.*).

52. Plaintiffs contends there is a reasonable apprehension that if the defective Note, and DOT, void Assignments, NOD, NOTS, and SOT are left outstanding, each would continue to and have caused serious injury, prejudice and damages to Plaintiffs as detailed above, including but not limited to the ongoing, attempted wrongful foreclosure of Plaintiffs' property rights.

53. Therefore, Plaintiffs apply for the adjudication and an order, i.e., declaratory relief that said instruments be cancelled pursuant to Civ. Code § 3412, and any and all instruments, including the First Assignment, Second Assignment, Notice of Default, Substitution of Trustee, Notices of Trustee's Sale be rescinded and cancelled.

**FOURTH CAUSE OF ACTION: SLANDER OF TITLE**

**(Against ALL Defendants; DOE Defendants)**

54. Plaintiffs hereby incorporate by reference the allegations in each of the preceding paragraphs as though fully set forth herein.

55. The recordation of an instrument facially valid but without underlying merit gives rise to an action for slander of title (*Forte* v. *Nolfi* (1972) 25 Cal.App.3d 656, 685-686 [102 Cal.Rptr. 455]). Moreover, the detriment suffered by Plaintiffs is often referred to as a "cloud" on title (e.g. *Coley* v. *Hecker* (1928) 206 Cal. 22, 29 [272 P. 1045]).

56. Assignments contained false statements which Defendants knew were false but made them regardless, to enable an unauthorized foreclosure, if an uncompleted on in that the subject property did not actually go to sale.

57. As the result of the falsity of the statements, Plaintiffs have previously made mistaken payments to the wrong entities, and relied upon the statements under the mistaken belief that Defendants were the beneficiary of their DOT when in fact Defendants were not the party with authority to collect on the subject loan.

58. Plaintiffs allege that by misdirecting and misrepresenting the true parties, Plaintiffs were prevented from making meaningful choices as to the Subject Loan or the sale of the Real Property.

59. Plaintiffs have been harmed in being compelled to incur the attorney fees and legal costs to compel the removable of the improper instruments recorded against their title.

WHEREFORE Plaintiffs pray for judgment as detailed below.

**FIFTH CAUSE OF ACTION: VIOLATION OF CALIFORNIA HOMEOWNER BILL OF RIGHTS (HBOR)**

**(Against ALL Defendants; DOE Defendants)**

60. Plaintiffs hereby incorporate by reference the allegations in each of the preceding paragraphs as though fully set forth herein.

61. HBOR provides for a private right of action for violation of the non-judicial foreclosure laws and provides new remedies allowing homeowners to sue for injunctive relief and damages for "material violation of sections Civil Codes 2923.5, 2923.5(a)2, 2923.5(b) 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2024.11 or 2924.17." (Civil Code § 2924.12).

62. Plaintiffs allege Defendants were required, by law, per 2923.5(a)(2) to meaningfully contact and after contact assess the alleged borrower's financial situation and explore options for the borrower to avoid foreclosure. Plaintiffs allege that notwithstanding any statutory provision re the timeline for such contact, the purported contact did not happen for purposes of satisfying the Statute, notwithstanding the forbearance agreement they signed under duress during recent bankruptcy proceedings.

63. Plaintiffs allege that a reasonable interpretation of the terms of 2923.5(a)(2) required Nationstar to make a meaningful effort to coordinate with the alleged borrowers re same statute sooner than a period exercised from the date of same contact, re the NOD filed at issue in this case; by failing to make a more timely attempt to coordinate with the borrowers,. Defendants materially violated 2923.5(a)(2).

64. Plaintiffs allege Defendants were required by law to provide a written notice of

Plaintiffs' right to demand a copy of the Note and evidence of Defendants alleged right to collect on the debt, a full accounting of all charges in support of the purported default; by failing to provide such notice, Defendants materially violated Civil Code § 2923.55(B).

65. Plaintiffs allege Defendants were required by law to offer alternatives to foreclosure on behalf of the valid, legal creditor, which Defendants failed to do, and therefore, Defendants are in material violation of Civil Code § 2924.9.

66. Plaintiffs allege that none of the Defendants were allowed to rely upon defective instruments as the basis for their Notice of Default, and Notices of Trustee's Sale, and associated recorded documents. Civil Code § 2924.17.

67. Plaintiffs allege it is a material violation of HBOR to use robo-signers, the documents from whom are recognized as forgeries, same robo-signers acting as individuals not reviewing competent or reliable evidence to sign or record instruments. Civil Code § 2924.17.

68. Plaintiffs allege defendant NATIONSTAR is in violation of the HBOR which forbids the recording of instruments that are false and misleading. See 2924(a)(D)(6); 2924.17.

69. Plaintiffs allege they have a private right of action under Civil Code §2924.12 and therefore, seek either return of title, or damages for the loss of equity in the subject property plus treble damages or $50,000, whichever is greater, in an amount to be proven at trial.

70. Plaintiffs herein seek attorney fees and costs as allowed by Civil Code § 2924.12.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request and pray for the following relief:

1. That the court enjoin Defendants, and each of them, from declaring the Subject DOT or Note in default, and/or holding a trustee's sale on the basis of any claimed default of the Note and Deed of Trust.

2. That the court award Plaintiffs statutory damages, actual damages, and attorney fees and costs for which Plaintiffs may be entitled.

3. That the court issue an order to quiet title to the subject Property vesting in Plaintiffs alone; that Defendants herein, and each of them, including all persons known or

unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this Complaint adverse to Plaintiffs' title or any cloud upon Plaintiffs' title thereto on the basis of any alleged assignment, recorded or unrecorded, created and/or recorded by Defendants, be declared to have no estate, right, title or interest in the subject property; that said Defendants be forever enjoined from asserting same;

4.      That the court award all statutory damages as permitted and applicable to the facts and law of this case.

5.      That the court award actual damages for mental distress as available under federal or state statute;

6.      That the court award punitive damages under the applicable facts and law.

7.      That the court order NATIONSTAR, BONYM, AFFINIA, and their agents, employs, heirs or assigns to record a Release and Reconveyance of the subject Deed of Trust;

8.      That the court order the subject Note cancelled, void, and of no force or effect;

9.      That the court order that the Plaintiffs' estate is established in Plaintiffs, and that Defendants and their predecessors, agents, representatives, assigns, employs, heirs, or contractors be barred and forever estopped from having or claiming any right or title to the premises adverse to Plaintiffs HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ;

10.     That the court restrain, enjoin, and permanently enjoin any foreclosure on the Subject Property arising through the void Deed of Trust;

11.     That the court enter any and all legal and equitable orders as are necessary or appropriate under the facts and law of this case;

12.     Award of Attorney's fees and costs pursuant to 15 U.S.C. §1639(b) or any applicable statute or contract.

13.     Pre- and post-judgment interest as allowable by law.

14.     Any such further relief, in law or equity, including injunctive or other such declaratory relief, to which Plaintiffs are entitled.

///

///

**JURY DEMAND**

Plaintiffs demand a trial by jury as a matter of right.

LAW OFFICE OF CHARLES T. MARSHALL

Dated: February 1, 2021

Charles T. Marshall
Attorney for Plaintiffs,
HERIBERTO S. and MARIA E. MARTINEZ

**VERIFICATION**

I, HERIBERTO S. MARTINEZ, am a party in the above-entitled action. I have read the foregoing Verified Complaint for Damages and know the contents thereof. I am informed and believe the matters therein to be true and, on that ground, allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Watsonville, California on February 1, 2021.

HERIBERTO S. MARTINEZ

**VERIFICATION**

I, MARIA E. MARTINEZ, am a party in the above-entitled action. I have read the foregoing Verified Complaint for Damages and know the contents thereof. I am informed and believe the matters therein to be true and, on that ground, allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Watsonville, California on this 1st day of February 2021.

MARIA E. MARTINEZ

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Law Office of Charles T. Marshall SBN 176091
Charles T. Marshall, Esq.
415 Laurel St., #405
San Diego, CA 92101
TELEPHONE NO.: 619-807-2628 FAX NO.: 866-575-7413
ATTORNEY FOR (Name): Plaintiffs, Heriberto Martinez, Maria Martinez

FOR COURT USE ONLY

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
2/1/2021 10:13 PM
Alex Calvo, Clerk
By: Helena Hanson, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ
STREET ADDRESS: 701 Ocean Street, Room 110
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Cruz, CA 95060
BRANCH NAME: Civil Division

CASE NAME:
Heriberto Martinez, Maria Martinez v. Nationstar Mortgage LLC, et al.

## CIVIL CASE COVER SHEET

| | | Complex Case Designation | CASE NUMBER: 21CV00246 |
|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court Rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☑ **Other real property (23)**

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation**
**(Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. ☐ Large number of separately represented parties
   - b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. ☐ Substantial amount of documentary evidence
   - d. ☐ Large number of witnesses
   - e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☑ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action *(specify)*:
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case.

Date: February 1, 2021
Charles T. Marshall
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

# EXHIBIT 2

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
2/19/2021 3:00 PM
Alex Calvo, Clerk
By: Sandra Gonzalez, Deputy

Michael R Gonzales, Esq., SBN 261302
Mccalla Raymer Leibert Pierce, LLP
301 E. Ocean Blvd., Suite 1720
Long Beach, CA 90802
Telephone/Fax: (562) 983-5377
Michael.Gonzales@Mccalla.Com

Attorneys for Defendant,
AFFINIA DEFAULT SERVICES, LLC

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SANTA CRUZ**

HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ,

Plaintiff,

vs.

NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER; THE BANK OF NEW YORK MELLON F/K/A THE 'BANK OF NEW YORK as successor in interest to JP MORGAN CHASE BANK, N.A. as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC.; All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiff' Title Thereto; DOES 1-100,

Defendants.

CASE NO.: 21CV00246

**DECLARATION OF NON-MONETARY STATUS TO PLAINTIFFS' COMPLAINT BY FORECLOSURE TRUSTEE PURSUANT TO CAL. CIV. CODE § 2924l**

I, AMY LEMUS, declare that:

1. I have personal knowledge of the facts herein, and if called as a witness, could and would competently testify thereto.

2. I oversee the operations of defendant AFFINIA DEFAULT SERVICES, LLC ("ADS").

EXHIBIT 2

3. The subject matter of this litigation is a Deed of Trust under which ADS is the substituted trustee. The Deed of Trust was dated March 11, 2005 and recorded March 28, 2005 with the Santa Cruz County Recorder's Office as Document No.: 2005-0019948. Nevertheless, the complaint does not reflect the correct recording information. A true and correct copy of the Deed of Trust is attached hereto as Exhibit 1. ADS has not been named as a Defendant due to any acts or omissions on its part in the performance of its duties as trustee.

4. ADS believes, based on the pleadings, that it has been named in this proceeding solely in its capacity as trustee or dual agent under the Deed of Trust. As stated above, ADS maintains a reasonable belief that it has not been named due to any acts of omissions on its part in the performance of its duties as trustee or agent. The basis for that belief is that the acts of ADS in commencing and proceeding with the foreclosure proceedings are privileged under Civil Code § 2924(d) and Civil Code § 47 and it has engaged in no actionable conduct of any kind.

5. ADS agrees to be bound by whatever non-monetary order or judgment is issued by the Court regarding the subject Deed of Trust.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 18, 2021 at Long Beach, CA

Amy Lemus

**AMY LEMUS, Declarant**

Branch :AD4,User :NP08 Order: 730-1604793 Title Officer: 70 Comment: Station Id :VQ3P

2005-0019948

Recorded Official Records County Of SANTA CRUZ GARY E. HAZELTON Recorder CAROL D. SUTHERLAND Assistant 08:00AM 28-Mar-2005 | REC FEE 75.00 | JEB | Page 1 of 23

RECORDED AT THE REQUEST OF SANTA CRUZ TITLE COMPANY

9534664 JHm

Recording Requested By:
M. KEMLER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
LISA VO

Fnd 1161045-LL [Space Above This Line For Recording Data]

161045 [Escrow/Closing #] 00089465671030005 [Doc ID #]

# DEED OF TRUST

MIN 1000157-0004921342-0

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated MARCH 11, 2005 , together with all Riders to this document.

**(B) "Borrower"** is
HERIBERTO S MARTINEZ, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
Page 1 of 16 Initials: H. S. M.
VMP-6A(CA) (0207) CHL (09/02)(d) VMP MORTGAGE FORMS - (800)521-7291 **Form 3005 1/01**
CONV/VA

* 2 3 9 9 1 *

* 0 8 9 4 6 5 6 7 1 0 0 0 0 0 1 0 0 6 A *

SANTA CRUZ (44),CA Page 1 of 23 Printed on 5/3/2016 2:16:33 PM
Document: TDD 2005.19948

DOC ID #: 0008946567103005

Borrower's address is
203 KIRSTEN COURT, WATSONVILLE, CA 95076 .
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
AMERICA'S WHOLESALE LENDER .
Lender is a CORPORATION
organized and existing under the laws of NEW YORK .
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219 .
**(D) "Trustee"** is
CTC FORECLOSURE SERVICES CORPORATION
155 N. LAKE AVENUE, PASADENA, CA 91109-7137 , .
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated MARCH 11, 2005 . The Note states that Borrower owes Lender
FIVE HUNDRED FIFTY TWO THOUSAND and 00/100

Dollars (U.S. $ 552,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 01, 2035 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] 0 |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

DOC ID #: 0008946567103005

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of SANTA CRUZ [Name of Recording Jurisdiction]:

Parcel ID Number: 01920411 which currently has the address of 203 KIRSTEN COURT, WATSONVILLE [Street/City], California 95076 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initials: [signature]

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: 0008946567103005

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Initials:

DOC ID #: 0008946567103005

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 0008946567103005

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Initials: H. D. M.

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials:

DOC ID #: 0008946567103005

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

DOC ID #: 0008946567103005

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: 0008946567103005

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

Initials: H.D. /M.

DOC ID #: 0008946567103005

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: [signature]

DOC ID #: 0008946567103005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____________________ (Seal)
HERIBERTO S. MARTINEZ -Borrower

_____________________ (Seal)
-Borrower

_____________________ (Seal)
-Borrower

_____________________ (Seal)
-Borrower

DOC ID #: 0008946567103005

**State of California**
**County of** MONTEREY } ss.

On MARCH 14,2005 before me, SHIRLEY HEITZ NOTARY PUBLIC personally appeared

HERIBERTO S. MARTINEZ

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(Seal)

SHIRLEY HEITZ
COMM. # 1321233
NOTARY PUBLIC-CALIFORNIA
MONTEREY COUNTY
COMM. EXP. SEPT. 20, 2005

# ADJUSTABLE RATE RIDER

**(PayOption MTA Twelve Month Average Index - Payment Caps)**

161045 [Escrow/Closing #] 0008946567103005 [Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this ELEVENTH day of MARCH, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AMERICA'S WHOLESALE LENDER

("Lender") of the same date and covering the property described in the Security Instrument and located at:

203 KIRSTEN COURT
WATSONVILLE, CA 95076
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agrees as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for changes in the interest rate and the monthly payments, as follows:





DOC ID #: 0008946567103

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of MAY, 2005 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 75/1000 percentage point(s) ( 3.075 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than 9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the FIRST day of each month beginning on May, 2005 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 01, 2035 , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

DOC ID #: 0008946567103005

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,775.45 , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of MAY, 2006 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

DOC ID #: 0008946567103005

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options;

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

DOC ID #: 0008946567103005

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

DOC ID #: 0008946567103005

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

HERIBERTO S. MARTINEZ -Borrower

-Borrower

-Borrower

-Borrower

Order Number: **09534664 JHM**

EXHIBIT "A"

The land referred to herein is described as follows:

SITUATE IN THE CITY OF WATSONVILLE, COUNTY OF SANTA CRUZ, STATE OF CALIFORNIA AND DESCRIBED AS FOLLOWS:

LOT TWENTY-SIX AS SHOWN ON THE MAP OF TRACT NO. 1265, THE HIGHLANDS FILE FOR RECORD AUGUST 25, 1989 IN BOOK 80 OF MAPS, PAGE 64 SANTA CRUZ COUNTY RECORDS.

APN: 019-204-11

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 301 E. Ocean Blvd., #1720, Long Beach, California 90802.

On February 19, 2021 I served: **DECLARATION OF NON-MONETARY STATUS TO PLAINTIFFS' COMPLAINT BY FORECLOSURE TRUSTEE PURSUANT TO CAL. CIV. CODE SECTION 29241** to the following interested parties:

Charles T. Marshall, Esq.
Law Office of Charles T. Marshall
415 Laurel Street, #405
San Diego, CA 92101
cmarshall@marshallestatelaw.com
*Attorney for Plaintiffs*

In the following manner:

☐ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed on the attached Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with McCalla Raymer Leibert Pierce, LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **OVERNIGHT COURIER (CCP §§ 1013(c), 2015.5)** I am readily familiar with the firm's practice of collection and processing correspondence for overnight courier. On the same day that correspondence is placed for collection and delivery, it is deposited in the ordinary course of business in a sealed envelope to the addressee(s), fully prepaid, and deposited at an office or a regularly utilized drop box of the overnight delivery carrier.

☒ **E-MAIL (CCP §§ 1013(a))** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the person(s) at the e-mail address(es) indicated on the attached Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **February 19, 2021,** Long Beach, California.

Monica Blake
Print or Type Name

*/s/ Monica Blake*
Signature

# EXHIBIT 3

## Case Information

21CV00246 | Heriberto Martinez, et al vs Nationstar Mortgage LLC. d.b.a. Mr. Cooper, et al

| Case Number | Court | Judicial Officer |
|---|---|---|
| 21CV00246 | Civil | Volkmann, Timothy |
| File Date | Case Type | Case Status |
| 02/01/2021 | (26) Unlimited Other Real Property | Active |

## Party

Plaintiff
Martinez, Heriberto S.

Active Attorneys
Lead Attorney
Marshall, Charles Thomas
Retained

Plaintiff
Martinez, Maria E.

Active Attorneys
Lead Attorney
Marshall, Charles Thomas
Retained

Defendant
Nationstar Mortgage LLC. d.b.a. Mr. Cooper

Defendant
Affinia Default Services, LLC.

Active Attorneys
Lead Attorney
Gonzales, Michael R
Retained

Defendant
THE BANK OF NEW YORK MELLON

## Cause of Action

| File Date | Cause of Action | Type | Filed By | Filed Against |
|---|---|---|---|---|
| 02/02/2021 | Complaint | Action | | |

## Events and Hearings

02/01/2021 Complaint Filed

4230160_335Martinezv

Comment
Complaint

02/01/2021 Summons Issued / Filed

4230160_432Summonsto

Comment
Summons

02/01/2021 Civil Case Cover Sheet

4230160_566CivilCove

Comment
Civil Case Cover Sheet

02/01/2021 30 Day Summons

Requested By
Martinez, Heriberto S., Martinez, Maria E.

Unserved

02/02/2021 Cause Of Action

| Action | File Date |
| --- | --- |
| Complaint | 02/02/2021 |

02/19/2021 Declaration

DNMS.pdf

Comment
of Non- Monetary Status to Plaintiff's Complaint by Foreclosure Trustee Pursuant to Cal Civ Code 29241

06/02/2021 Case Management Conference

(CMC) Case Management Conference Notice

Judicial Officer
Volkmann, Timothy

Hearing Time
8:30 AM

## Documents

4230160_335Martinezv

4230160_432Summonsto

4230160_566CivilCove

Public

(CMC) Case Management Conference Notice

DNMS.pdf

# EXHIBIT 4

REDACTED

2005-0019948

Recorded Official Records County Of SANTA CRUZ GARY E. HAZELTON Recorder CAROL D. SUTHERLAND Assistant 08:00AM 28-Mar-2005 | REC FEE 75.00 | JEB Page 1 of 23

RECORDED AT THE REQUEST SANTA CRUZ TITLE COMPANY

Recording Requested By:
M. KEMLER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

REDACTED

Prepared By:
LISA VO

Redacted

[Space Above This Line For Recording Data]

REDACTED [Escrow/Closing #] REDACTED [Doc ID #]

# DEED OF TRUST

MIN REDACTED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated MARCH 11, 2005, together with all Riders to this document.

**(B) "Borrower"** is
HERIBERTO S MARTINEZ, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

Initials: H. S. M.

VMP-6A(CA) (0207) CHL (09/02)(d) VMP MORTGAGE FORMS - (800)521-7291 **Form 3005 1/01**

CONV/VA

EXHIBIT 4



DOC ID #: REDACTED

Borrower's address is
203 KIRSTEN COURT, WATSONVILLE, CA 95076 .
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
AMERICA'S WHOLESALE LENDER .
Lender is a CORPORATION
organized and existing under the laws of NEW YORK .
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219 .
**(D) "Trustee"** is
CTC FORECLOSURE SERVICES CORPORATION
155 N. LAKE AVENUE, PASADENA, CA 91109-7137 , .
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated MARCH 11, 2005 . The Note states that Borrower owes Lender
FIVE HUNDRED FIFTY TWO THOUSAND and 00/100

Dollars (U.S. $ 552,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 01, 2035 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | 0 |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials: [handwritten initials]

DOC ID #: REDACTED

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of SANTA CRUZ [Name of Recording Jurisdiction]:

Parcel ID Number: 01920411 which currently has the address of 203 KIRSTEN COURT, WATSONVILLE [Street/City], California 95076 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initials: [signature]

DOC ID #: REDACTED

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: REDACTED

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: REDACTED

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: REDACTED

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

REDACTED
DOC ID #:

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #: REDACTED

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Initials:

DOC ID #: REDACTED

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials: [signature]

DOC ID #: REDACTED

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Initials:

DOC ID #: REDACTED

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: REDACTED

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

Initials: H. D. / M.

DOC ID #: REDACTED

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: [signature]

DOC ID #: REDACTED

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________ (Seal)
HERIBERTO S. MARTINEZ -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

DOC ID # REDACTED

**State of California**
**County of** MONTEREY          } ss.

On MARCH   14,2005          before me,   SHIRLEY HEITZ NOTARY PUBLIC
                                                                personally appeared

          HERIBERTO S. MARTINEZ

                                                    , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                                                    (Seal)

SHIRLEY HEITZ
COMM. # 1321233
NOTARY PUBLIC-CALIFORNIA
MONTEREY COUNTY
COMM. EXP. SEPT. 20, 2005

Initials:

# ADJUSTABLE RATE RIDER

**(PayOption MTA Twelve Month Average Index - Payment Caps)**

REDACTED REDACTED

[Escrow/Closing #] [Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this ELEVENTH day of MARCH, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AMERICA'S WHOLESALE LENDER

("Lender") of the same date and covering the property described in the Security Instrument and located at:

203 KIRSTEN COURT
WATSONVILLE, CA 95076
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agrees as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for changes in the interest rate and the monthly payments, as follows:



DOC ID #: REDACTED

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of MAY, 2005, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 75/1000 percentage point(s) ( 3.075 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than 9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the FIRST day of each month beginning on May, 2005. I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 01, 2035, I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

DOC ID #: REDACTED

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,775.45 , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of MAY, 2006 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

DOC ID #: REDACTED

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options;

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

DOC ID #: REDACTED

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

DOC ID # REDACTED

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

HERIBERTO S. MARTINEZ -Borrower

-Borrower

-Borrower

-Borrower

REDACTED

Order Number

EXHIBIT "A"

The land referred to herein is described as follows:

SITUATE IN THE CITY OF WATSONVILLE, COUNTY OF SANTA CRUZ, STATE OF CALIFORNIA AND DESCRIBED AS FOLLOWS:

LOT TWENTY-SIX AS SHOWN ON THE MAP OF TRACT NO. 1265, THE HIGHLANDS FILE FOR RECORD AUGUST 25, 1989 IN BOOK 80 OF MAPS, PAGE 64 SANTA CRUZ COUNTY RECORDS.

APN:   019-204-11

Prepared by: LISA VO

**AMERICA'S WHOLESALE LENDER**

DATE: 03/11/2005
BORROWER: HERIBERTO S. MARTINEZ
CASE #: REDACTED
LOAN #:
PROPERTY ADDRESS: 203 KIRSTEN COURT
WATSONVILLE, CA 95076

Branch #:
910 E. HAMILTON AVENUE #110
CAMPBELL, CA 95008
Phone: (408)558-7700
Br Fax No.: (408)369-8271

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated MARCH 11, 2005 , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by me to
AMERICA'S WHOLESALE LENDER
(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

**If within the first THIRTY SIX months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment.**







All other terms and conditions of the above referenced Note remain in full force and effect.

HERIBERTO S. MARTINEZ — Borrower

________________ Borrower

________________ Borrower

________________ Borrower

# EXHIBIT 5

**AKERMAN LLP**
JUSTIN D. BALSER (SBN 213478)
Email: justin.balser@akerman.com
NATALIE L. WINSLOW (SBN 281704)
Email:natalie.winslow@akerman.com
601 W. Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Attorneys for Defendants
NATIONSTAR MORTGAGE LLC dba MR. COOPER and THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor to JPMORGAN CHASE BANK, N.A., as Trustee for the Holders of the SAMI II Trust 2005-AR2, Mortgage Pass-Through Certificates, Series 2005-AR2 *incorrectly sued as* THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor in interest to JP MORGAN CHASE BANK, N.A., as Trustee for Structured Asset Mortgage Investments 11 Inc. Mortgage Pass-Through Certificates Series 2005-AR2

**AKERMAN LLP**
601 W. FIFTH STEET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ,

Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC DBA MR. COOPER; THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK as successor in interest to JP MORGAN CHASE BANK, N.A., as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS 11 INC. Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC; All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintiffs' Title, or any Cloud on Plaintiffs' Title Thereto; DOES 1-100,

Defendants.

Case No.

**DECLARATION OF NATALIE L. WINSLOW IN SUPPORT OF NOTICE OF REMOVAL TO FEDERAL COURT BASED ON DIVERSITY JURISDICTION**

I, Natalie L. Winslow, declare as follows:

1. I am licensed to practice law in the state of California and before this court and am an attorney with the law firm Akerman LLP, counsel for Nationstar Mortgage LLC dba Mr. Cooper and The Bank of New York Mellon fka The Bank of New York, as successor to JPMorgan Chase Bank, N.A., as Trustee for the Holders of the SAMI II Trust 2005-AR2, Mortgage Pass-Through Certificates, Series 2005-AR2 (**BoNYM**) in this matter. If called as a witness, I could and would testify competently from personal knowledge as to each of the facts set forth in this declaration. This declaration is offered in support of Nationstar's notice of removal of the action of plaintiffs Heriberto S. Martinez and Maria E. Martinez from the superior court of the state of California for the county of Santa Cruz to the United States District Court for the Northern District of California.

AKERMAN LLP
601 W. FIFTH STEET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

2. Attached hereto as Exhibit "A" is a true and correct copy of a screenshot from the third-party brokerage website redfin.com that I obtained on March 8, 2021 regarding the parcel of real property commonly referred to as 203 Kirsten Court, Watsonville, California. According to redfin.com, the current (as of March 8, 2021) estimated value of the property is $610,965.00.

I declare under penalty of perjury under the laws of the state of California and under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of March, 2021 in Las Vegas, Nevada.

**AKERMAN LLP**

By: /s/ Natalie L. Winslow
Natalie L. Winslow

Attorneys for Defendants NATIONSTAR MORTGAGE LLC dba MR. COOPER and THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor to JPMORGAN CHASE BANK, N.A., as Trustee for the Holders of the SAMI II Trust 2005-AR2, Mortgage Pass-Through Certificates, Series 2005-AR2 *incorrectly sued as* THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor in interest to JP MORGAN CHASE BANK, N.A., as Trustee for Structured Asset Mortgage Investments 11 Inc. Mortgage Pass-Through Certificates Series 2005-AR2

**AKERMAN LLP**
601 W. FIFTH STEET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342



Search

Search Overview Redfin Estimate Public Facts Listing Details Sale & Tax History Schools Neighborhood

Street View

203 Kirsten Ct, Watsonville, CA 95076

| $610,965 | 4 | 2.5 | 2,388 |
|---|---|---|---|
| Redfin Estimate | Beds | Baths | Sq Ft |

**Off Market**

This home last sold for $280,000 on Aug 1, 1991.

## Redfin Estimate

Edit Home Facts to improve accuracy.

EXHIBIT A

Create an Owner Estimate

$610,965

Track This Estimate

+$331K since sold in 1991

1 year 5 years

Redfin Estimate based on recent home sales.

## Homeowner Tools

Edit home facts

Review property details and add renovations.

Manage photos

Update home photos or make them private.

 Create an Owner Estimate

Select recent home sales to estimate your home's value.

View Owner Dashboard

Track your estimate and nearby sale activity.

Advertisement Hide this ad

## Cost of home ownership

### $2,203 per month

30 year fixed, 9.5% interest

Customize calculations

- Mortgage payment $1,884
- Property taxes $268
- HOA dues Add
- Homeowners' insurance $51
- Utilities & Maintenance Add

You could save up to $856 per month by refinancing

Best monthly savings
$1,028 per month
Get pre-qualified

Best interest savings
$1,572 per month
Get pre-qualified

| Mortgage Type | Fixed 30 Year |
|---|---|
| APR as of 3/8 | 3.178% |
| Total interest cost | $824,145 |
| Fees* | $1,615 |
| Lender | loanDepot NMLS# 174457 |

| Mortgage Type | Fixed 15 Year |
|---|---|
| APR as of 3/8 | 2.345% |
| Total interest cost | $737,025 |
| Fees* | $1,615 |
| Lender | loanDepot NMLS# 174457 |

Rates and savings are estimated. Actual rates and savings will vary.

Browse all rates

Rate Disclosure

Should I refinance?

## Rental Estimate for 203 Kirsten Ct

Our gears are turning, but we don't have enough information about rentals in your area to generate an accurate estimate at this time. Learn more about the Rental Estimate.

Edit Home Facts to make sure we've got the right info.

## About This Home

How many beds, baths, and sq. ft. does this home have?

How much is this home worth?

When was this home built and last sold?

How competitive is the market for this home?

What comparable homes are near this home?

What's the full address of this home?

## Location



Map Nearby Homes For Sale

Expand Map | Street View | Directions

Advertisement

Hide this ad

## Public Facts for 203 Kirsten Ct

Edit Facts

| | |
|---|---|
| Beds | 4 |
| Baths | 2.5 |
| Sq. Ft. | 2,388 |
| Stories | — |
| Lot Size | 5,009 Sq. Ft. |
| Style | Single Family Residential |
| Year Built | 1990 |
| Year Renovated | 1990 |
| County | Santa Cruz County |

APN 01920411

Home facts updated by county records on Feb 17, 2021.

## Property Details for 203 Kirsten Ct

### Interior Features

**Bathroom Information**

- # of Full Baths: 2
- # of 1/2 Baths: 1

**Heating & Cooling**

- Heating Type: Central

**Fireplace Information**

- # of Fireplaces: 2
- Has Fireplace

**Room Information**

- # of Rooms: 9

### Exterior Features, Taxes / Assessments

**Exterior Information**

- Phyiscal Condition: Good

**Assessor Information**

- Assessment Year: 2020
- Tax Area: WATSONVILLE CTY

### Property / Lot Details

**Property Information**

- Subdivision Name: 1265 THE HLNDS
- Living Sq. Ft: 2,388
- Building Sq. Ft: 2,388

**Parking & Garage Information**

**Parking & Garage Information**

- Garage/Parking Sq. Ft: 456

**Lot Information**

- # of Buildings: 1
- Land Sq. Ft: 5,009
- Legal Lot Number: 26
- Municipality Name: WATSONVILLE CTY
- Land Use Code: Sfr
- Acres: 0.115
- County Use Description: SINGLE FAMILY RESID

**Utility Information**

- Sewer Type: Public
- Water Service Type: Public

---

## Sale & Tax History for 203 Kirsten Ct

Sale History **Tax History**

| Year | Property Tax | Land | + | Additions | = | Assessed Value |
|---|---|---|---|---|---|---|
| 2020 | $7,989 (+5.2%) | $363,393 | | $313,547 | | $676,940 |
| 2019 | $7,595 (+2.6%) | $363,393 | | $313,547 | | $676,940 |
| 2018 | $7,405 (+7.8%) | $340,719 | | $301,138 | | $641,857 |
| 2017 | $6,868 (+40.2%) | $306,000 | | $270,300 | | $576,300 |
| 2016 | $4,900 (+0.3%) | $306,000 | | $270,300 | | $576,300 |
| 2015 | $4,883 (+2.2%) | $171,789 | | $246,482 | | $418,271 |
| 2014 | $4,777 (−0.4%) | $165,894 | | $238,024 | | $403,918 |
| 2013 | $4,796 (+5.0%) | $165,894 | | $238,024 | | $403,918 |
| 2012 | $4,566 (+2.3%) | $165,144 | | $236,948 | | $402,092 |
| 2011 | $4,463 (+1.3%) | $161,906 | | $232,302 | | $394,208 |

| 2011 | $4,463 (+1.3%) | $161,906 | $232,302 | $394,208 |
|---|---|---|---|---|
| 2010 | $4,408 (−2.0%) | $158,731 | $227,747 | $386,478 |
| 2009 | $4,499 (+2.5%) | $157,545 | $226,045 | $383,590 |
| 2008 | $4,388 | $157,919 | $226,582 | $384,501 |

## Activity for 203 Kirsten Ct

| 3 Views | 0 Favorites | 0 X-Outs |
|---|---|---|

## Schools

GreatSchools Rating

**2**/10

T. S. MacQuiddy Elementary School

Public • K to 5 • Serves this home

604 Students · 2 reviews · 0.7 mi Distance

**2**/10

E. A. Hall Middle School

Public • 6 to 8 • Serves this home

647 Students · 2 reviews · 0.9 mi Distance

**4**/10

Watsonville High School

Public • 9 to 12 • Serves this home

2170 Students · 5 reviews · 1.1 mi Distance

School data provided by GreatSchools. School service boundaries are intended to be used as reference only. To verify enrollment eligibility for a property, contact the school directly.

## Flood Risk

Flood Factor: Minimal (1/10) · Estimated FEMA Zone: X

**Flood Factor: Minimal (1/10) • Estimated FEMA Zone: X**

Most homes have some risk of flooding. Learn more in these two independent assessments, Flood Factor and FEMA.

See flood risk details

## Neighborhood Info for 203 Kirsten Ct

Redfin > California > Watsonville > 95076

### Transportation in 95076

| 78 / 100 | 31 / 100 | 60 / 100 |
|---|---|---|
| Very Walkable | Some Transit | Bikeable |
| Walk Score® | Transit Score® | Bike Score® |

This area is **very walkable** — most errands can be accomplished on foot. **Transit is available**, with a few nearby public transportation options. There is **some amount of infrastructure for biking**.

### 95076 Real Estate Sales (Last 30 days)

| | |
|---|---|
| Median List Price | $710K |
| Median $ / Sq. Ft. | $448 |
| Median Sale / List | 100.9% |

### Market Competition in 95076

Calculated over the last 3 months

70 Very Competitive
Redfin Compete Score™

0 100

- Many homes get multiple offers, some with waived contingencies.
- The average homes sell for about **1%** above list price and go pending in around **39 days**.
- Hot homes can sell for about **5%** above list price and go pending in around **20 days**.

## What It Takes to Win an Offer near 95076

~$500K Offer

5 Weeks Ago

2 Beds, 2 Baths, ~1,250 Sq. Ft. House

**Winning Offer**

| 5% | 5 | 5 | — |
|---|---|---|---|
| Over List Price | Days on Market | Competing Offers | Down Payment |

We submitted a Non-Contingent offer over the price of recent sales in the neighborhood. We got a Seller Multiple Counter Offer and responded quickly with a slight... More

Ann McKinney
Redfin Agent

## Median Real Estate Values

| Location | List Price | $ / Sq. Ft. | Sale / List |
|---|---|---|---|
| 95076 | $990,000 | $474 | 100.2% |
| Watsonville | $844,500 | $477 | 100.6% |
| Santa Cruz County | $1,055,000 | $622 | 102.4% |

## $/Sq. Ft. Houses in 95076





Advertisement                                                                    Hide this ad



## Nearby Similar Homes

Homes similar to 203 Kirsten Ct are listed between $479K to $925K at an average of $480 per square foot.

HOT HOME

**$699,000**

3 Beds   2 Baths   1,485 Sq. Ft.

220 Kimberly Ln, WATSONVILLE, CA 95076

Yard   Garage   Deck

**$479,000**

2 Beds 2 Baths 972 Sq. Ft.

746 Bronte Ave, WATSONVILLE, CA 95076



**$655,000**

3 Beds 2 Baths 1,558 Sq. Ft.

825 Delta Way, WATSONVILLE, CA 95076

Garage Fireplace Granite Countertops Stucco Walk-In Closet Modern Contemporary

**$518,000**

2 Beds   1 Bath   1,434 Sq. Ft.

731 Lincoln St Unit B, WATSONVILLE, CA 95076

HOT HOME

**$514,900**

2 Beds 2 Baths 1,286 Sq. Ft.

668 Delta Way, WATSONVILLE, CA 95076

Yard Garage Formal Dining Room Stucco Walk-In Closet

HOT HOME

**$479,000**

2 Beds 1 Bath 697 Sq. Ft.

11 Landis Ave, FREEDOM, CA 95019

Yard Stainless Appliances

View More Homes

## Nearby Recently Sold Homes

Nearby homes similar to 203 Kirsten Ct have recently sold between $585K to $875K at an average of $360 per square foot.

SOLD JAN 21, 2021 3D WALKTHROUGH

**$785,000** Last Sold Price

4 Beds   3 Baths   2,790 Sq. Ft.

12 Via Serra St, WATSONVILLE, CA 95076

Yard   Stucco   Walk-In Closet

SOLD OCT 27, 2020

**$650,000** Last Sold Price

3 Beds 2.5 Baths 1,600 Sq. Ft.

151 Willowcreek St, WATSONVILLE, CA 95076

Hardwood Floor | Granite Countertops | Stainless Appliances

SOLD SEP 10, 2020 3D WALKTHROUGH

**$585,000** Last Sold Price

3 Beds 2.5 Baths 1,747 Sq. Ft.

12665 Fair Way, ROYAL OAKS, CA 95076

Yard | Garage | Parking | Low Street Noise | Hardwood Floor | High Ceiling

View More Recently Sold Homes

## Nearby Properties

Data from public records.

236 Crestview Drive, Watsonville, CA
2 Beds | 2 Baths | 1263 Sq. Ft.

26 Jasmine Lane, Watsonville, CA
4 Beds | 2.5 Baths | 2528 Sq. Ft.

215 June Court, Watsonville, CA
4 Beds | 2.5 Baths | - Sq. Ft.

1128 Madison Street, Watsonville, CA
4 Beds | 2.5 Baths | 2528 Sq. Ft.

215 Kirsten Court, Watsonville, CA
4 Beds | 2.5 Baths | 2406 Sq. Ft.

Show More

## More Real Estate Resources

### New Listings in 95076

0 Summit
3 Sanderling Cir
244 Green Meadow Dr Unit C
91 Cormorant Way
375 Clifford Ave #211
668 Delta Way
Show More

### Zip Codes

95076 Homes For Sale

### Nearby Cities

Gilroy Homes For Sale
Los Gatos Homes For Sale
Saratoga Homes For Sale
San Jose Homes For Sale

Hollister Homes For Sale
Pacific Grove Homes For Sale
Show More

## Popular Searches

Watsonville Luxury Homes
Watsonville Cheap Homes
Watsonville Land
Watsonville Vintage
Watsonville Homes with Pools
Watsonville New Listings
Show More

---

About
Press
Investor Relations
Blog
Jobs

Agent Referrals
Contact Us
Help
Mobile
News & Data

 

Countries
United States
Canada

Updated January 2020: By searching, you agree to the Terms of Use, and Privacy Policy.

Copyright: © 2021 Redfin. All rights reserved. Patent pending.

REDFIN and all REDFIN variants, TITLE FORWARD, WALK SCORE, and the R logos, are trademarks of Redfin Corporation, registered or pending in the USPTO.

California DRE #01521930

TREC: Info About Brokerage Services, Consumer Protection Notice

If you are using a screen reader, or having trouble reading this website, please call Redfin Customer Support for help at 1-844-759-7732.

GreatSchools Ratings provided by GreatSchools.org.

# EXHIBIT 6

2004-0063876

Recorded Official Records County Of SANTA CRUZ GARY E. HAZELTON Recorder CAROL D. SUTHERLAND Assistant 08:01AM 02-Sep-2004 | REC FEE 10.00 | LAH | Page 1 of 2

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL TO:**
Heriberto S. Martinez and Maria E. Martinez
203 Kirsten Court
Watsonville, Ca 95075

Space Above This Line for Recorder's Use Only

A.P.N.: 019-204-11 File No.: 4404-1538222 (CR)

# GRANT DEED

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX $x; CITY TRANSFER TAX $**No Consideration**;
SURVEY MONUMENT FEE $

[ ] computed on the consideration or full value of property conveyed, OR
[ ] computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,
[ ] unincorporated area; [ x ] City of **WATSONVILLE**, and
[ x ] Exempt from transfer tax; Reason:

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Heriberto S. Martinez, a married man**

hereby GRANT(s) to **Heriberto S. Martinez and Maria E. Martinez, husband and wife as Joint Tenants**

the following described property in the City of **WATSONVILLE**, County of **SANTA CRUZ**, State of **California**:

**LOT TWENTY-SIX AS SHOWN ON THE MAP OF TRACT NO. 1265, THE HIGHLANDS FILE FOR RECORD AUGUST 25, 1989 IN BOOK 80 OF MAPS, PAGE 64 SANTA CRUZ COUNTY RECORDS.**

Dated: **08/16/2004**

Mail Tax Statements To: **SAME AS ABOVE**

EXHIBIT 6

A.P.N.: **019-204-11** Grant Deed - continued File No.: **4404-1538222 (CR)**
Date: **08/16/2004**

Heriberto S. Martinez
**Heriberto S. Martinez**

STATE OF California )SS
COUNTY OF Santa Cruz )

On August 16, 2004, before me, Cheryl A Rangel personally appeared Heriberto S. Martinez, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*This area for official notarial seal*

Signature Cheryl A Rangel

My Commission Expires: ______

Notary Name: Cheryl A Rangel Notary Phone: 831-722-4111
Notary Registration Number: 1351067 County of Principal Place of Business: Santa Cruz

CHERYL A. RANGEL
COMM. # 1351067
Notary Public-California
County of Santa Cruz
My Comm. Exp. Apr. 13, 2006

# EXHIBIT 7



**LDD / ALL**
**Transmittal Number: 22789287**
**Date Processed: 02/19/2021**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | LeAllen Frost<br>Nationstar Mortgage LLC<br>8950 Cypress Waters Blvd.<br>Coppell, TX 75019-4620 |

| | |
|---|---|
| **Entity:** | Nationstar Mortgage LLC<br>Entity ID Number 2050233 |
| **Entity Served:** | Nationstar Mortgage LLC. d/b/a Mr. Cooper |
| **Title of Action:** | Heriberto S. Martinez vs. Nationstar Mortgage LLC. d/b/a Mr. Cooper |
| **Matter Name/ID:** | Heriberto S. Martinez vs. Nationstar Mortgage LLC. d/b/a Mr. Cooper (10967559) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Property |
| **Court/Agency:** | Santa Cruz County Superior Court, CA |
| **Case/Reference No:** | 21CV00246 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/19/2021 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Charles T. Marshall<br>619-807-2628 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com

EXHIBIT 7

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
2/1/2021 10:13 PM
Alex Calvo, Clerk
By: Helena Hanson, Deputy

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER (See Attachment for Complete List of Defendants)

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

HERIBERTO S. MARTINEZ, MARIA E. MARTINEZ

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Santa Cruz County Superior Court
701 Ocean Street, Room 110
Santa Cruz, CA 95060

CASE NUMBER *(Número del Caso)*: 21CV00246

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Office of Charles T. Marshall, 415 Laurel Street, #405 San Diego, CA 92101 (619)807-2628

DATE: *(Fecha)* 2/1/2021 Clerk, by *(Secretario)* Helena Hanson ALEX CALVO, Deputy *(Adjunto)*
Helena Hanson

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF SANTA CRUZ — EUREKA

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: Heriberto Martinez, Maria Martinez v. Nationstar Mortgage LLC., et al | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

- This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
- If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☑ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK as successor in interest to JP MORGAN CHASE BANK, N.A. as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS 11 INC. Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC.; All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiff' Title Thereto; DOES 1-100,

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT Attachment to Summons**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
2/1/2021 10:13 PM
Alex Calvo, Clerk
By: Helena Hanson, Deputy

Charles T. Marshall, Esq, (SBN 176091)
Law Office of Charles T. Marshall
415 Laurel St., #405
San Diego, CA. 92101
Tel: (619) 807-2628
Fax: (866) 575-7413
Email: cmarshall@marshallestatelaw.com
Attorney for Plaintiffs,
HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA CRUZ**

HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ,

Plaintiffs,

vs.

NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER; THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK as successor in interest to JP MORGAN CHASE BANK, N.A. as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS 11 INC. Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC.; All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiff' Title Thereto; DOES 1-100,

Defendant(s).

Case No: 21CV00246

**PLAINTIFFS' VERIFIED COMPLAINT FOR DAMAGES**

1) QUIET TITLE
2) DECLARATORY JUDGMENT UNDER CODE OF CIVIL PROC., § 1060
3) CANCELLATION OF INSTRUMENTS
4) SLANDER OF TITLE
5) VIOLATION OF CALIFORNIA HOMEOWNER BILL OF RIGHTS

**JURY TRIAL DEMANDED**

**TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Plaintiffs HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ (hereinafter "Plaintiffs") sue NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER ("NATIONSTAR"); THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK ("BONYM") as successor in interest to JP MORGAN CHASE BANK, N.A. ("CHASE") as Trustee for

STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. ("SAMII") Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC. ("AFFINIA"); DOES 1-100, and any and all adverse claimants, known or unknown, for quiet title and related causes of action.

## I. PARTIES AND JURISDICTION

1. Plaintiffs, HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ, are residents of Santa Cruz County, California. They own the real property commonly known as 203 Kirsten Avenue, Watsonville, CA. All acts complained of herein occurred within the territorial jurisdiction of this court lying in SANTA CRUZ COUNTY, CALIFORNIA.

2. Defendant NATIONSTAR MORTGAGE, LLC is a Texas limited liability registered as a foreign entity with the California Secretary of State.

3. Defendant THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK ("BONYM") as successor in interest to JP MORGAN CHASE BANK, N.A. ("CHASE") as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. ("SAMII") Mortgage Pass-Through Certificates Series 2005-AR2, believed to be a New York trust organized as a Real Estate Mortgage Investment Conduit ("REMIC") under Title 26 U.S.C. 860A et seq.

4. Defendant AFFINIA DEFAULT SERVICES is a Florida LLC, registered as a foreign LLC with the State of California under Entity No. 201733210180 with a registration date of November 17, 2017.

5. "All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described in The Complaint Adverse to Plaintiffs' Title, Or Any Cloud on Plaintiff' Title Thereto" are sued herein pursuant to California Code of Civil Procedure Section 762.020(a).

## II. JURISDICTION

6. This court has subject matter jurisdiction over all matters alleged herein.

7. This action is properly filed as an unlimited civil action seeking damages in excess of $25,000.

8. The court has jurisdiction over Plaintiffs and all named Defendants as corporations doing business in the State of California or who have potential interest in the real property located in Watsonville, California.

## III. VENUE

9. Venue is proper in this court because the real property at issue is located in SANTA CRUZ County and significant events of record occurred in SANTA CRUZ County.

## IV. FACTUAL ALLEGATIONS

10. Upon information and belief and by published statements made by Defendants, Plaintiffs allege:

11. Plaintiffs' real property that is the subject of the disputed loan is commonly known as 203 Kirsten Avenue, Watsonville, CA, with a legal description of: ("Subject Property")

## V. TITLE HISTORY

12. A Deed of Trust ("DOT") dated on or about June 3, 2005 was recorded in the office of the SANTA CRUZ County Recorder as Instrument # 2004-0063876, naming "America's Wholesale Lender" (AWL) as the 'Lender', although the event at issue is not subject to being described as a loan with an associated lender and/or borrower, although the term "Subject Loan" will be used as a stand-in to describe the events at issue in this case.

13. The Note and Deed of Trust on the Subject Property are hereinafter referred to as the 'purported' "Subject Loan."

14. The 'Lender's' identity was misrepresented, as were the terms of the financing.

15. The Note stated that: (a) "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder;'" (b) if the borrower is in default, "the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me. . . ." (c) "[i]f the Note Holder has required me to pay immediately in full the Note Holder will have the right to be paid back by me. . . ." (d) "[i]n addition to the protections given to the Note Holder under this

Note, a Mortgage, Deed of Trust, or Security Deed (the 'Security Instrument') protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note."

16. Thus, the Note contractually defines Note Holder as someone who both (a) takes this Note by transfer AND (b) who is entitled to receive payments under this Note.

## VI. SUBSEQUENT RECORDED DOCUMENTS

17. On or about June 29, 2013 at, a document entitled Assignment of Deed of Trust was recorded against the Subject Property in the Official Records of SANTA CRUZ County as # 2013-0041355 ("First Assignment").

18. The First Assignment, purported to transfer any beneficial interest in the DOT **from** AWL **to** Nationstar.

19. For the reasons stated herein, AWL **had no interest** in the DOT to transfer via the First Assignment.

20. On information and belief, Plaintiffs allege that AWL was never a licensed lender, and was never a New York Corporation at or near the time of loan origination at issue in this case, and thus void, not merely voidable.

21. On information and belief, Plaintiffs allege that the alleged Assignment of DOT was the product of robo-signing and thus void, not merely voidable.

22. On information and belief, Plaintiffs allege that the alleged Assignment of DOT was performed with reference to same DOT, without a corresponding assignment of the associated debt (promissory Note), making same DOT alleged assignment void, a nullity.

## FIRST CAUSE OF ACTION: QUIET TITLE

(Against NATIONSTAR, BONYM, DOE DEFENDANTS)

23. Plaintiffs hereby incorporate by reference the allegations in each of the preceding paragraphs as though fully set forth herein.

24. Plaintiffs have title to the subject real property, as pleaded herein. It is their primary residence.

25. In the Deed of Trust, Plaintiffs agreed: "Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."

26. Plaintiffs' title to the Subject Property is superior to all others as is fully set forth herein.

27. There is a break in the chain of title of the DOT in the Subject Property.

28. There is no link between an original lender/beneficiary of the DOT and any claimed successor "beneficiaries."

29. Defendants, and each of them, have claimed an adverse interest in Plaintiffs' real property by virtue of recording false instruments against the Subject Property to effectuate an unauthorized foreclosure.

30. Plaintiffs are not in default of loan payments to any of the Defendants, rendering the recorded NODs materially false.

31. Plaintiffs' title has been clouded, broken and irreparably made unmarketable by Defendants' acts as complained of in this Action. Accordingly, Plaintiffs seeks to quiet title to the Subject Property.

32. Defendants, in the manners specified hereinabove, have falsely and maliciously made claims adverse to Plaintiffs and against their Subject Property by wrongfully recording fraudulent and false documents claiming encumbrances on Plaintiffs' Property. Therefore; pursuant, but not thereby limited to, CCP § 761.020(d) et seq. *Id.*, Plaintiffs seek a determination and declaratory judgment quieting title as of the date of this filing.

33. The elements of this Cause of Action for Quiet Title pursuant to CCP § 761.020, are contained herein and include:

a. The description of the property including its legal description and street address or common designation, the subject of this action;

b. The title to which a determination is sought and basis thereof, is further described herein above and includes Plaintiffs HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ;

c. The adverse claims to the title of Plaintiffs against which a determination is sought also include unknown defendants who may claim to be the "beneficial holder" of Plaintiffs' Mortgage Note and Deed of Trust via a PSA; who claims to have acquired "ownership" as beneficiary of the alleged "debt" on Plaintiffs'

Property through an unknown assignment and further allege to be either the agent of, nominee and/or the nominal beneficiary for, itself and each claim mentioned herein is adverse to title to the Property[1];

d. The date as of which the determination is sought is the date of filing of this complaint and/or the adjudication or resolution of this cause of action by the Court, whichever is later[2];

e. The prayer for determination of the title of Plaintiffs against the adverse claims of Defendants is included herein below[3];

34. Plaintiffs are informed and believe and thereon allege as further stated herein, that Defendants, and each one, including all persons known or unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this Complaint adverse to Plaintiffs' title or any cloud upon Plaintiffs' title thereto[4] and DOES 1-20 inclusive; each claim an interest in the property adverse to Plaintiffs. Plaintiffs denies that any Defendant has a legal, equitable or any other right, claim, title or interest in Plaintiffs' Property.

**TENDER**

35. Plaintiffs are not in default to these Defendants and do not owe these Defendants a loan obligation under the Note or Deed of Trust and any attempted trustee sale would be void.

36. Due to the lack of pecuniary interest in the Note and Deed of Trust by any Defendant; Plaintiffs' denial of the purported debt; the invalid and void purported "Note," "DOT," Plaintiffs are not required to tender.[5]

37. Plaintiffs therefore seek to quiet title to the subject Property vesting in Plaintiffs alone; that Defendants herein, and each of them, including all persons known or unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this Complaint adverse to Plaintiffs' title or any cloud upon Plaintiffs' title thereto on the basis of any alleged assignment, recorded or unrecorded, created and/or recorded by Defendants, be

---

[1] CCP § 761.020(c).

[2] CCP § 761.020(d).

[3] CCP § 761.020(e).

[4] CCP § 762.050.

[5] *Pfeifer v. Countrywide Home Loans, Inc.*, 2012 Cal. App. LEXIS 1265 (Cal. App. 1st Dist. 2012).

declared to have no estate, right, title or interest in the subject property; that said Defendants be forever enjoined from asserting same; and, for judgment as more fully set forth below.

38. Each named Defendant proffers that the Mortgage Note and DOT authorizes them to conduct certain actions specified herein, which Plaintiffs allege are wrongful and/or illegal. Said actions include claims against and adverse to Plaintiffs' title to and ownership of their Property. These actions and claims adverse to Plaintiffs' claims include, but are not thereby limited to, the following:

- To claim "ownership" of Plaintiffs' alleged "debt" or the Mortgage Note;
- To accept "assignment" of the purported DOT;
- To "securitize" Plaintiffs' purported "mortgage;"
- To act as a "successor in interest" to Plaintiffs' Property;
- To authorize foreclosure on Plaintiffs' Property;
- To allege a "default" or "breach" of "obligations" against Plaintiffs;
- To declare "...all sums secured..." "Immediately due and payable;"
- To attempt to collect the purported "debt" from Plaintiffs;
- To foreclose on and sell Plaintiffs' Property;
- To record or cause to be recorded any documents related to Plaintiffs' Property;
- To claim to be the "Lender," "investor," "holder" or "holder in due course of the purported "debt;" or in the DOT;
- To declare "...all sums secured..." "immediately due and payable;"
- To attempt to collect or enforce the purported "debt;" or
- To foreclose on the alleged "security" and sell Plaintiffs' Property.

39. Plaintiffs have suffered monetary damages as a result of this violation, as well as attorney fees and costs.

**SECOND CAUSE OF ACTION: DECLARATORY RELIEF UNDER CC § 1060**

**(Against ALL Defendants; DOE Defendants)**

40. Plaintiffs incorporate all the allegations in the preceding paragraphs as set forth fully herein.

41. "A complaint for declaratory relief is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court." See *Wellenkamp v. Bank of America* (1978) 21 Cal.3d 943, 947; see also *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 605.

42. An actual controversy has arisen and now exists between Plaintiffs and ALL Defendants and each of them, concerning the respective rights and duties to each of the respective parties as to the purported Note and Deed of Trust and Subject Loan.

43. Defendants mistakenly and unlawfully contend BONYM is the beneficiary, and that the loan was transferred legally and validly to the Securitized Trust, and the Securitized Trust held legal rights to be transferred to it.

44. No defendant has or had the legal right to foreclose upon Plaintiffs' DOT or to declare Plaintiffs' Note or DOT due and in default.

45. A judicial determination of the rights and responsibilities of the parties over the Note and DOT is necessary and proper at this time, as the uncertainty over the issue of whether the Defendants, and each of them, have an enforceable interest in the Note and DOT resulted in Plaintiffs previously making mistaken payments to strangers; subjecting Plaintiffs to the illegal accounting practices and abuses by NATIONSTAR, prejudicing and harming Plaintiffs from seeking relief from the real creditor and clearing his debt, finally resulting in the attempted wrongful and oppressive non-judicial foreclosure of Plaintiffs' home.

46. There is a justiciable controversy in which BONYM and NATIONSTAR have recorded false documents and made false assertions of authority to hold a foreclosure sale of Plaintiffs' home through the use of AFFINIA.

47. A judicial determination resolving this actual controversy is necessary and appropriate at this time.

48. WHEREFORE Plaintiffs pray for judgment as detailed below.

## **THIRD CAUSE OF ACTION: CANCELLATION OF INSTRUMENTS**

**(Against ALL DEFENDANTS; DOE Defendants)**

49. Plaintiffs hereby incorporate by reference the allegations in each of the preceding paragraphs as though fully set forth herein.

50. Pursuant to Civil Code § 3412, "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against

whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

51. The Court may order cancellation of an invalid written instrument that is void or voidable. *Compass Bank v. Petersen*, 886 F.Supp.2d 1186, 1194 (C.D. Cal. 2012) (citing [43] Cal. Civ. Code § 3412 *et seq.*).

52. Plaintiffs contends there is a reasonable apprehension that if the defective Note, and DOT, void Assignments, NOD, NOTS, and SOT are left outstanding, each would continue to and have caused serious injury, prejudice and damages to Plaintiffs as detailed above, including but not limited to the ongoing, attempted wrongful foreclosure of Plaintiffs' property rights.

53. Therefore, Plaintiffs apply for the adjudication and an order, i.e., declaratory relief that said instruments be cancelled pursuant to Civ. Code § 3412, and any and all instruments, including the First Assignment, Second Assignment, Notice of Default, Substitution of Trustee, Notices of Trustee's Sale be rescinded and cancelled.

**FOURTH CAUSE OF ACTION: SLANDER OF TITLE**

**(Against ALL Defendants; DOE Defendants)**

54. Plaintiffs hereby incorporate by reference the allegations in each of the preceding paragraphs as though fully set forth herein.

55. The recordation of an instrument facially valid but without underlying merit gives rise to an action for slander of title (*Forte* v. *Nolfi* (1972) 25 Cal.App.3d 656, 685-686 [102 Cal.Rptr. 455]). Moreover, the detriment suffered by Plaintiffs is often referred to as a "cloud" on title (e.g. *Coley* v. *Hecker* (1928) 206 Cal. 22, 29 [272 P. 1045]).

56. Assignments contained false statements which Defendants knew were false but made them regardless, to enable an unauthorized foreclosure, if an uncompleted on in that the subject property did not actually go to sale.

57. As the result of the falsity of the statements, Plaintiffs have previously made mistaken payments to the wrong entities, and relied upon the statements under the mistaken belief that Defendants were the beneficiary of their DOT when in fact Defendants were not the party with authority to collect on the subject loan.

58. Plaintiffs allege that by misdirecting and misrepresenting the true parties, Plaintiffs were prevented from making meaningful choices as to the Subject Loan or the sale of the Real Property.

59. Plaintiffs have been harmed in being compelled to incur the attorney fees and legal costs to compel the removable of the improper instruments recorded against their title.

WHEREFORE Plaintiffs pray for judgment as detailed below.

**FIFTH CAUSE OF ACTION: VIOLATION OF CALIFORNIA HOMEOWNER BILL OF RIGHTS (HBOR)**

**(Against ALL Defendants; DOE Defendants)**

60. Plaintiffs hereby incorporate by reference the allegations in each of the preceding paragraphs as though fully set forth herein.

61. HBOR provides for a private right of action for violation of the non-judicial foreclosure laws and provides new remedies allowing homeowners to sue for injunctive relief and damages for "material violation of sections Civil Codes 2923.5, 2923.5(a)2, 2923.5(b) 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2024.11 or 2924.17." (Civil Code § 2924.12).

62. Plaintiffs allege Defendants were required, by law, per 2923.5(a)(2) to meaningfully contact and after contact assess the alleged borrower's financial situation and explore options for the borrower to avoid foreclosure. Plaintiffs allege that notwithstanding any statutory provision re the timeline for such contact, the purported contact did not happen for purposes of satisfying the Statute, notwithstanding the forbearance agreement they signed under duress during recent bankruptcy proceedings.

63. Plaintiffs allege that a reasonable interpretation of the terms of 2923.5(a)(2) required Nationstar to make a meaningful effort to coordinate with the alleged borrowers re same statute sooner than a period exercised from the date of same contact, re the NOD filed at issue in this case; by failing to make a more timely attempt to coordinate with the borrowers, Defendants materially violated 2923.5(a)(2).

64. Plaintiffs allege Defendants were required by law to provide a written notice of

Plaintiffs' right to demand a copy of the Note and evidence of Defendants alleged right to collect on the debt, a full accounting of all charges in support of the purported default; by failing to provide such notice, Defendants materially violated Civil Code § 2923.55(B).

65. Plaintiffs allege Defendants were required by law to offer alternatives to foreclosure on behalf of the valid, legal creditor, which Defendants failed to do, and therefore, Defendants are in material violation of Civil Code § 2924.9.

66. Plaintiffs allege that none of the Defendants were allowed to rely upon defective instruments as the basis for their Notice of Default, and Notices of Trustee's Sale, and associated recorded documents. Civil Code § 2924.17.

67. Plaintiffs allege it is a material violation of HBOR to use robo-signers, the documents from whom are recognized as forgeries, same robo-signers acting as individuals not reviewing competent or reliable evidence to sign or record instruments. Civil Code § 2924.17.

68. Plaintiffs allege defendant NATIONSTAR is in violation of the HBOR which forbids the recording of instruments that are false and misleading. See 2924(a)(D)(6); 2924.17.

69. Plaintiffs allege they have a private right of action under Civil Code §2924.12 and therefore, seek either return of title, or damages for the loss of equity in the subject property plus treble damages or $50,000, whichever is greater, in an amount to be proven at trial.

70. Plaintiffs herein seek attorney fees and costs as allowed by Civil Code § 2924.12.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request and pray for the following relief:

1. That the court enjoin Defendants, and each of them, from declaring the Subject DOT or Note in default, and/or holding a trustee's sale on the basis of any claimed default of the Note and Deed of Trust.

2. That the court award Plaintiffs statutory damages, actual damages, and attorney fees and costs for which Plaintiffs may be entitled.

3. That the court issue an order to quiet title to the subject Property vesting in Plaintiffs alone; that Defendants herein, and each of them, including all persons known or

unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this Complaint adverse to Plaintiffs' title or any cloud upon Plaintiffs' title thereto on the basis of any alleged assignment, recorded or unrecorded, created and/or recorded by Defendants, be declared to have no estate, right, title or interest in the subject property; that said Defendants be forever enjoined from asserting same;

4. That the court award all statutory damages as permitted and applicable to the facts and law of this case.

5. That the court award actual damages for mental distress as available under federal or state statute;

6. That the court award punitive damages under the applicable facts and law.

7. That the court order NATIONSTAR, BONYM, AFFINIA, and their agents, employs, heirs or assigns to record a Release and Reconveyance of the subject Deed of Trust;

8. That the court order the subject Note cancelled, void, and of no force or effect;

9. That the court order that the Plaintiffs' estate is established in Plaintiffs, and that Defendants and their predecessors, agents, representatives, assigns, employs, heirs, or contractors be barred and forever estopped from having or claiming any right or title to the premises adverse to Plaintiffs HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ;

10. That the court restrain, enjoin, and permanently enjoin any foreclosure on the Subject Property arising through the void Deed of Trust;

11. That the court enter any and all legal and equitable orders as are necessary or appropriate under the facts and law of this case;

12. Award of Attorney's fees and costs pursuant to 15 U.S.C. §1639(b) or any applicable statute or contract.

13. Pre- and post-judgment interest as allowable by law.

14. Any such further relief, in law or equity, including injunctive or other such declaratory relief, to which Plaintiffs are entitled.

///

///

**JURY DEMAND**

Plaintiffs demand a trial by jury as a matter of right.

LAW OFFICE OF CHARLES T. MARSHALL

Dated: February 1, 2021

Charles T. Marshall
Attorney for Plaintiffs,
HERIBERTO S. and MARIA E. MARTINEZ

**VERIFICATION**

I, HERIBERTO S. MARTINEZ, am a party in the above-entitled action. I have read the foregoing Verified Complaint for Damages and know the contents thereof. I am informed and believe the matters therein to be true and, on that ground, allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Watsonville, California on February 1, 2021.

HERIBERTO S. MARTINEZ

**VERIFICATION**

I, MARIA E. MARTINEZ, am a party in the above-entitled action. I have read the foregoing Verified Complaint for Damages and know the contents thereof. I am informed and believe the matters therein to be true and, on that ground, allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Watsonville, California on this 1st day of February 2021.

MARIA E. MARTINEZ

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Law Office of Charles T. Marshall SBN 176091
Charles T. Marshall, Esq.
415 Laurel St., #405
San Diego, CA 92101
TELEPHONE NO.: 619-807-2628 FAX NO.: 866-575-7413
ATTORNEY FOR (Name): Plaintiffs, Heriberto Martinez, Maria Martinez

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ
STREET ADDRESS: 701 Ocean Street, Room 110
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Cruz, CA 95060
BRANCH NAME: Civil Division

FOR COURT USE ONLY

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
2/1/2021 10:13 PM
Alex Calvo, Clerk
By: Helena Hanson, Deputy

CASE NAME:
Heriberto Martinez, Maria Martinez v. Nationstar Mortgage LLC, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 21CV00246 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court Rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [✓] **Other real property (23)**

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [✓] punitive
4. Number of causes of action *(specify)*:
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case.

Date: February 1, 2021
Charles T. Marshall
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CIVIL CASE COVER SHEET
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov



NJH / ALL
**Transmittal Number: 22776689**
**Date Processed: 02/17/2021**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | LeAllen Frost<br>Nationstar Mortgage LLC<br>8950 Cypress Waters Blvd.<br>Coppell, TX 75019-4620 |

| | |
|---|---|
| **Entity:** | Nationstar Mortgage LLC<br>Entity ID Number 2050233 |
| **Entity Served:** | Nationstar Mortgage |
| **Title of Action:** | Heriberto S. Martinez vs. Nationstar Mortgage LLC. d/b/a Mr. Cooper |
| **Matter Name/ID:** | Heriberto S. Martinez vs. Nationstar Mortgage LLC. d/b/a Mr. Cooper (10967559) |
| **Document(s) Type:** | Notice |
| **Nature of Action:** | Property |
| **Court/Agency:** | Santa Cruz County Superior Court, CA |
| **Case/Reference No:** | 21CV00246 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/16/2021 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Charles T. Marshall<br>619-807-2628 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**
Charles T. Marshall, Esq. (SBN 176091)
Law Office of Charles T. Marshall
415 Laurel Street, #405
San Diego, CA 92101
Tel: (619) 807-2628
Fax: (866) 575-7413
Email: cmarshall@marshallestatelaw.com

Attorney for Plaintiffs,
HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SANTA CRUZ**

| | |
|---|---|
| HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ,<br>Plaintiffs,<br>vs.<br>NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER; THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK as successor in interest to JP MORGAN CHASE BANK, N.A. as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC.; All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiff' Title Thereto; DOES 1-100,<br>Defendants. | **Case No.:** 21CV00246<br><br>**NOTICE OF PENDENCY OF ACTION PURSUANT TO CCP §405**<br><br>**Complaint Filed: February 1, 2021** |

**NOTICE IS HEREBY GIVEN** that HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ, by and through their attorney, filed the above-entitled Complaint against NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER; THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK as successor in interest to JP MORGAN CHASE BANK, N.A. as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS 11 INC.

Law Office of Charles T. Marshall
415 Laurel Street, #405
San Diego, CA 92101
Tel. (619) 807-2628

Law Office of Charles T. Marshall
415 Laurel Street, #405
San Diego, CA 92101
Tel. (619) 807-2628

Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC.; All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described in The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiff' Title Thereto; DOES 1-100. The Complaint was filed on February 1, 2021 and is now pending in the above-entitled court.

The above-entitled action is an unlimited jurisdiction case that affects title and right of possession of specific real property in Santa Cruz County commonly known as 203 Kirsten Avenue, Watsonville, CA. The specific real property affected by the action is located in Santa Cruz County, California, and is described as follows:

LOT TWENTY-SIX AS SHOWN ON THE MAP OF TRACT NO. 1265, THE HIGHLANDS FILE FOR RECORD AUGUST 25, 1989 IN BOOK 80 OF MAPS, PAGE 64 SANTA CRUZ COUNTY RECORDS. APN 019-204-11.

In addition to a removal of the cloud on title, the Complaint asserts causes of action for Declaratory Judgment Under Code of Civil Procedure § 1060, Violation of Calif. Homeowner Bill of Rights, Slander of Title, Cancellation of Instruments and Quiet Title.

Dated: February 11, 2021

LAW OFFICE OF CHARLES T. MARSHALL

By: ______________________

Charles T. Marshall, Esq.
Attorney for Plaintiffs,
HERIBERTO S. MARTINEZ and
MARIA E. MARTINEZ

Law Office of Charles T. Marshall
415 Laurel Street, #405
San Diego, CA 92101
Tel. (619) 807-2628

PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 222 West 6th Street, Suite 400, San Pedro, CA 92660. On February 11, 2021, I served the within **NOTICE OF PENDENCY OF ACTION** the interested parties in said action by placing the original a true copy thereof, enclosed in a served envelope and addressed as follows:

| NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER<br>c/o CSC Lawyers Incorporating Service 2710 Gateway Oaks Drive, Ste 150N Sacramento, Ca 95833 | |
|---|---|
| THE BANK OF NEW YORK MELLON<br>F/K/A the Bank of New York as successor in interest to JP Morgan Chase Bank, N.A. as Trustee for Structured Asset Mortgage Investments II Inc. Mortgage Pass-Through Certificates Series 2005-AR2<br>c/o CT Corporation System<br>818 W 7th St, Suite 930<br>Los Angeles, CA 90017 | AFFINIA DEFAULT SERVICES, LLC<br>c/o California Registered Agents, Inc.<br>1267 Willis Street, Suite 100<br>Redding, CA 96001 |

__X__ BY CERTIFIED MAIL, RETURN RECEIPT I am "readily familiar" with the practice of collection and processing correspondence for mailing. Under that practice, it would be deposited in a box or other facility regularly maintained by the United States Postal Service with First-Class postage thereon fully prepaid that same day at San Pedro, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____ OVERNIGHT DELIVERY – I deposited such envelope for collection and delivery by GSO Overnight with delivery fees paid or provided for in accordance with ordinary business practices. Packages for overnight delivery by GSO Overnight are deposited with a facility regularly maintained by GSO Overnight for receipt on the same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Dated: February 11, 2021

MELISSA N. ALVAREZ

Melissa N. Alvarez
222 West 6th Street, Suite 400
San Pedro CA 90731

U.S. POSTAGE P
FCM LETTER
SAN PEDRO, CA
90731
FEB 12, 21
AMOUNT
$7.00
R2304H108580-06

Nationstar Mortgage
c/o CSC- Lawyers Inc.
2710 Gateway Oaks Dr., Ste. 150N
Sacramento CA 95833-3502

RETURN RECEIPT REQUESTED

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
2/19/2021 3:00 PM
Alex Calvo, Clerk
By: Sandra Gonzalez, Deputy

Michael R Gonzales, Esq., SBN 261302
Mccalla Raymer Leibert Pierce, LLP
301 E. Ocean Blvd., Suite 1720
Long Beach, CA 90802
Telephone/Fax: (562) 983-5377
Michael.Gonzales@Mccalla.Com

Attorneys for Defendant,
AFFINIA DEFAULT SERVICES, LLC

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SANTA CRUZ**

HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ,

Plaintiff,

vs.

NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER; THE BANK OF NEW YORK MELLON F/K/A THE 'BANK OF NEW YORK as successor in interest to JP MORGAN CHASE BANK, N.A. as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC.; All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiff' Title Thereto; DOES 1-100,

Defendants.

CASE NO.: 21CV00246

**DECLARATION OF NON-MONETARY STATUS TO PLAINTIFFS' COMPLAINT BY FORECLOSURE TRUSTEE PURSUANT TO CAL. CIV. CODE § 2924l**

I, AMY LEMUS, declare that:

1. I have personal knowledge of the facts herein, and if called as a witness, could and would competently testify thereto.

2. I oversee the operations of defendant AFFINIA DEFAULT SERVICES, LLC ("ADS").

3. The subject matter of this litigation is a Deed of Trust under which ADS is the substituted trustee. The Deed of Trust was dated March 11, 2005 and recorded March 28, 2005 with the Santa Cruz County Recorder's Office as Document No.: 2005-0019948. Nevertheless, the complaint does not reflect the correct recording information. A true and correct copy of the Deed of Trust is attached hereto as Exhibit 1. ADS has not been named as a Defendant due to any acts or omissions on its part in the performance of its duties as trustee.

4. ADS believes, based on the pleadings, that it has been named in this proceeding solely in its capacity as trustee or dual agent under the Deed of Trust. As stated above, ADS maintains a reasonable belief that it has not been named due to any acts of omissions on its part in the performance of its duties as trustee or agent. The basis for that belief is that the acts of ADS in commencing and proceeding with the foreclosure proceedings are privileged under Civil Code § 2924(d) and Civil Code § 47 and it has engaged in no actionable conduct of any kind.

5. ADS agrees to be bound by whatever non-monetary order or judgment is issued by the Court regarding the subject Deed of Trust.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 18, 2021 at Long Beach, CA

Amy Lemus

**AMY LEMUS, Declarant**

RECORDED AT THE REQUEST OF SANTA CRUZ TITLE COMPANY

9534664-JHm

Recording Requested By:
M. KEMLER

2005-0019948

Recorded Official Records County Of SANTA CRUZ GARY E. HAZELTON Recorder CAROL D. SUTHERLAND Assistant 08:00AM 28-Mar-2005 | REC FEE 75.00 | JEB | Page 1 of 23

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
LISA VO

Fnd 1161045-LL

[Space Above This Line For Recording Data]

161045 [Escrow/Closing #] 00089465671030005 [Doc ID #]

# DEED OF TRUST

MIN 1000157-0004921342-0

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated MARCH 11, 2005 , together with all Riders to this document.

**(B) "Borrower"** is
HERIBERTO S MARTINEZ, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

Initials: H. S. M.

VMP-6A(CA) (0207) CHL (09/02)(d) VMP MORTGAGE FORMS - (800)521-7291 **Form 3005 1/01**
CONV/VA

* 2 3 9 9 1 *

* 0 8 9 4 6 5 6 7 1 0 0 0 0 0 1 0 0 6 A *

DOC ID #: 0008946567103005

Borrower's address is
203 KIRSTEN COURT, WATSONVILLE, CA 95076 .
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
AMERICA'S WHOLESALE LENDER .
Lender is a CORPORATION
organized and existing under the laws of NEW YORK .
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219 .
**(D) "Trustee"** is
CTC FORECLOSURE SERVICES CORPORATION
155 N. LAKE AVENUE, PASADENA, CA 91109-7137 , .
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated MARCH 11, 2005 . The Note states that Borrower owes Lender
FIVE HUNDRED FIFTY TWO THOUSAND and 00/100

Dollars (U.S. $ 552,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 01, 2035 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] 0 |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

DOC ID #: 0008946567103005

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of SANTA CRUZ :

[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

Parcel ID Number: 01920411 which currently has the address of 203 KIRSTEN COURT, WATSONVILLE ,

[Street/City]

California 95076 ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initials: H. S. M.

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: 0008946567103005

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: 0008946567103005

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

Initials:

DOC ID #: 0008946567103005

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 0008946567103005

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Initials: H. D. M.

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials: [signature]

DOC ID #: 0008946567103005

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

DOC ID #: 0008946567103005

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

Initials:

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

Initials: H. D. / M.

DOC ID #: 0008946567103005

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: [signature]

DOC ID #: 0008946567103005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________________ (Seal)
HERIBERTO S. MARTINEZ -Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

DOC ID #: 0008946567103005

**State of California**
**County of** MONTEREY } ss.

On MARCH 14,2005 before me, SHIRLEY HEITZ NOTARY PUBLIC personally appeared

HERIBERTO S. MARTINEZ

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(Seal)

SHIRLEY HEITZ
COMM. # 1321233
NOTARY PUBLIC-CALIFORNIA
MONTEREY COUNTY
COMM. EXP. SEPT. 20, 2005

# ADJUSTABLE RATE RIDER

**(PayOption MTA Twelve Month Average Index - Payment Caps)**

161045 [Escrow/Closing #] 0008946567103005 [Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this ELEVENTH day of MARCH, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AMERICA'S WHOLESALE LENDER

("Lender") of the same date and covering the property described in the Security Instrument and located at:

203 KIRSTEN COURT
WATSONVILLE, CA 95076
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agrees as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for changes in the interest rate and the monthly payments, as follows:





DOC ID #: 0008946567103

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of MAY, 2005 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 75/1000 percentage point(s) ( 3.075 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than 9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the FIRST day of each month beginning on May, 2005 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 01, 2035 , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

DOC ID #: 0008946567103005

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,775.45 , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of MAY, 2006 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

DOC ID #: 0008946567103005

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options;

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

DOC ID #: 0008946567103005

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

DOC ID #: 0008946567103005

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

HERIBERTO S. MARTINEZ -Borrower

-Borrower

-Borrower

-Borrower

Order Number: **09534664 JHM**

EXHIBIT "A"

The land referred to herein is described as follows:

SITUATE IN THE CITY OF WATSONVILLE, COUNTY OF SANTA CRUZ, STATE OF CALIFORNIA AND DESCRIBED AS FOLLOWS:

LOT TWENTY-SIX AS SHOWN ON THE MAP OF TRACT NO. 1265, THE HIGHLANDS FILE FOR RECORD AUGUST 25, 1989 IN BOOK 80 OF MAPS, PAGE 64 SANTA CRUZ COUNTY RECORDS.

APN: 019-204-11

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 301 E. Ocean Blvd., #1720, Long Beach, California 90802.

On February 19, 2021 I served: **DECLARATION OF NON-MONETARY STATUS TO PLAINTIFFS' COMPLAINT BY FORECLOSURE TRUSTEE PURSUANT TO CAL. CIV. CODE SECTION 29241** to the following interested parties:

Charles T. Marshall, Esq.
Law Office of Charles T. Marshall
415 Laurel Street, #405
San Diego, CA 92101
cmarshall@marshallestatelaw.com
*Attorney for Plaintiffs*

In the following manner:

☐ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed on the attached Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with McCalla Raymer Leibert Pierce, LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **OVERNIGHT COURIER (CCP §§ 1013(c), 2015.5)** I am readily familiar with the firm's practice of collection and processing correspondence for overnight courier. On the same day that correspondence is placed for collection and delivery, it is deposited in the ordinary course of business in a sealed envelope to the addressee(s), fully prepaid, and deposited at an office or a regularly utilized drop box of the overnight delivery carrier.

☒ **E-MAIL (CCP §§ 1013(a))** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the person(s) at the e-mail address(es) indicated on the attached Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **February 19, 2021,** Long Beach, California.

Monica Blake — Print or Type Name

*/s/ Monica Blake* — Signature

**AKERMAN LLP**
JUSTIN D. BALSER (SBN 213478)
Email: justin.balser@akerman.com
NATALIE L. WINSLOW (SBN 281704)
Email:natalie.winslow@akerman.com
601 W. Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Attorneys for Defendants
NATIONSTAR MORTGAGE LLC dba MR. COOPER and THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor to JPMORGAN CHASE BANK, N.A., as Trustee for the Holders of the SAMI II Trust 2005-AR2, Mortgage Pass-Through Certificates, Series 2005-AR2 *incorrectly sued as* THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor in interest to JP MORGAN CHASE BANK, N.A., as Trustee for Structured Asset Mortgage Investments 11 Inc. Mortgage Pass-Through Certificates Series 2005-AR2

**AKERMAN LLP**
601 W. FIFTH STEET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HERIBERTO S. MARTINEZ AND MARIA E. MARTINEZ,

Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC DBA MR. COOPER; THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK as successor in interest to JP MORGAN CHASE BANK, N.A., as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENTS 11 INC. Mortgage Pass-Through Certificates Series 2005-AR2; AFFINIA DEFAULT SERVICES, LLC; All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintiffs' Title, or any Cloud on Plaintiffs' Title Thereto; DOES 1-100,

Defendants.

Case No.

**DECLARATION OF NATALIE L. WINSLOW IN SUPPORT OF NOTICE OF REMOVAL TO FEDERAL COURT BASED ON DIVERSITY JURISDICTION**

I, Natalie L. Winslow, declare as follows:

1. I am licensed to practice law in the state of California and before this court and am an attorney with the law firm Akerman LLP, counsel for Nationstar Mortgage LLC dba Mr. Cooper and The Bank of New York Mellon fka The Bank of New York, as successor to JPMorgan Chase Bank, N.A., as Trustee for the Holders of the SAMI II Trust 2005-AR2, Mortgage Pass-Through Certificates, Series 2005-AR2 (**BoNYM**) in this matter. If called as a witness, I could and would testify competently from personal knowledge as to each of the facts set forth in this declaration. This declaration is offered in support of Nationstar's notice of removal of the action of plaintiffs Heriberto S. Martinez and Maria E. Martinez from the superior court of the state of California for the county of Santa Cruz to the United States District Court for the Northern District of California.

**AKERMAN LLP**
601 W. FIFTH STEET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

2. Attached hereto as Exhibit "A" is a true and correct copy of a screenshot from the third-party brokerage website redfin.com that I obtained on March 8, 2021 regarding the parcel of real property commonly referred to as 203 Kirsten Court, Watsonville, California. According to redfin.com, the current (as of March 8, 2021) estimated value of the property is $610,965.00.

I declare under penalty of perjury under the laws of the state of California and under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of March, 2021 in Las Vegas, Nevada.

**AKERMAN LLP**

By: /s/ Natalie L. Winslow
Natalie L. Winslow

Attorneys for Defendants NATIONSTAR MORTGAGE LLC dba MR. COOPER and THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor to JPMORGAN CHASE BANK, N.A., as Trustee for the Holders of the SAMI II Trust 2005-AR2, Mortgage Pass-Through Certificates, Series 2005-AR2 *incorrectly sued as* THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as successor in interest to JP MORGAN CHASE BANK, N.A., as Trustee for Structured Asset Mortgage Investments 11 Inc. Mortgage Pass-Through Certificates Series 2005-AR2

**AKERMAN LLP**
601 W. FIFTH STEET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action. My business address is 601 West Fifth Street, Suite 300, Los Angeles, CA 90071.

On **March 12, 2021**, I served the following document(s) described as:

**NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER'S NOTICE OF REMOVAL TO FEDERAL COURT BASED ON DIVERSITY JURISDICTION**

on the persons below as follows:

Charles T. Marshall, Esq.
LAW OFFICE OF CHARLES T. MARSHALL
415 Laurel Street, No. 405
San Diego, California 92101
Telephone: 619.807.26.28
Facsimile: 866.575.7413
Email: cmarshall@marshallestatelaw.com

*Attorney for Plaintiffs,*
*HERIBERTO S. MARTINEZ and*
*MARIA E. MARTINEZ*

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **March 12, 2021**, at Los Angeles, California.

Evelyn S. Duarte
(Type or print name)

(Signature)